Hoiss, Plaintiff in error, vs. The State, Defendant in error.

*March 24 — April 9, 1891.*

*Criminal law: Trial of issue as to sanity.*

Under the provision of sec. 4697, when a special plea of insanity is interposed in a criminal case, that issue is to be first tried by a jury, and their verdict thereon must be confined to that issue. A verdict in such a case that, "We find the man sane when he committed the crime," shows that the jury misconceived the issue submitted to them, and it should have been set aside and a new trial granted.

ERROR to the Municipal Court of *Milwaukee* County. The case is stated in the opinion.

*A. C. Brazee* and *Thomas H. Dorr,* for the plaintiff in error, contended that the verdict was invalid, and should be set aside and a new trial be granted. *State v. Moon,* 41 Wis. 684; *Yanke v. State,* 51 id. 471; *Lee v. State,* 74 id. 46; *Connors v. State,* 47 id. 523.

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey,* Assistant Attorney General, and oral argument by *Mr. Clancey.*

Cole, C. J.  The plaintiff in error was informed against and put on trial in the municipal court of Milwaukee for the offenses (1) of forging a check given by the Milwaukee Gas Light Company, and (2) for uttering such forged check, and was found guilty.  The forgery consisted in changing a check for $6 to $60, and it was passed for the latter amount.  The defendant interposed a special plea of insanity, on which issue was taken by the state.  This special issue was tried before the trial of the issue of "not guilty." The proceedings on both issues are embraced on the bill of exceptions, and brought to this court for review.  The main errors relied on for a reversal of the judgment occurred on the trial of the special issue, and, after a careful consideration of the exceptions, we are constrained to hold that there was a mistrial.

It appears that the defendant was about thirty-eight years of age, was a married man, and has resided for many years in Milwaukee.  He seems to have been well known to many business men in that city, quite a. number of whom testified as to his excellent reputation for honesty and integrity.   Up to the time of his arrest for this offense, his good character does not seem to have been questioned by any one who knew him or did business with him.   He seems to have been a saving, industrious man, and had accumulated considerable property.   These facts are established by the evidence beyond dispute.  The evidence shows conclusively, also, that the defendant, from early youth, has been subject to fits of epilepsy.   He was born in Germany, and there is much testimony that there was a hereditary tendency in his family to this disease.   The attacks have lately been more severe and frequent than in early life. The defendant, when a fit came on, would fall helpless, and remain unconscious for several minutes, and for some time after he came out of the fit, and for a period before he was attacked, his friends would notice a marked change in his conduct and disposition.   While naturally good tempered, he became morose and melancholy, and would make gross mistakes in business matters at such times.   The medical testimony all agreed that the inevitable effect of frequent attacks of epilepsy was to impair the mental faculties, and affect, more or less, the moral powers; that this disturbance of the mental and moral faculties might precede the attacks, and continue for some time after the person had apparently regained his consciousness.

This, in substance, was the nature and character of the evidence which was given on the trial of the special issue, and which was not seriously controverted by the state. The trial court instructed as to what was meant by insanity in law, which charge was sufficiently favorable to the defendant; at least it was not excepted to by his coun-

sel. When the jury first came into court, they announced that they found the defendant guilty, with a recommendation. The court told the jury that the question for them to determine was whether the defendant was sane or insane at the time of the commission of the alleged offense, and that, if they found him to be insane at that time, whether he was sane or insane at the time of trial; and the court refused to receive the verdict announced, and, after some colloquy with counsel, directed the jury to retire to their room and deliberate upon the question submitted. The jury thereupon retired, and soon came into court again, and the foreman announced the verdict in the following words: "The verdict is, we find the man sane at the time when he committed the crime." The verdict was received and recorded as the final disposition of the trial of the special issue.

Now, it appears to us that these proceedings show that the jury entirely misconceived the issue they were selected to try. They evidently became confused, and did not understand that they had nothing to do with the issue as to the defendant's guilt. This is obvious on the face of both verdicts as announced. The first verdict which they found was simply that the defendant was guilty, with a recommendation, finding nothing on the issue of insanity. In the other verdict which was received they seemed not to have entirely lost sight of the issue of insanity, but were manifestly impressed with the idea that they must pass upon the question of the defendant's guilt. It requires no argument to show that the verdict should be confined to the special issue, and not go outside of it. This is what the statute plainly declares and means. "The special issue thereby made shall first be tried by the jury selected," and, "if such jury shall find upon such special issue that such accused person was so insane, or that there is a reasonable doubt of his sanity at the time of the commission of such

alleged offense, they shall also find him not guilty of such offense for that reason; and when such insanity is found the jury shall also find whether such accused person has recovered from such insanity, and is of sound mind at the time of such trial." Sec. 4697, S. & B. Ann. Stats.

The statute contemplates that the issue of insanity and that of "not guilty" should be kept distinct, and should not be confounded or blended together. Each issue is to be tried by itself. It is true, provision is made for the case where the jury selected to try the special issue disagree, but we have no concern with such a case now. Here the jury did not disagree on the special issue, but seem to have confounded it with the main issue as to the guilt of the defendant, an issue with which they had nothing to do. They entirely misconceived the question they were to try, as the verdict shows. We think, therefore, it is plain that the jury misconceived the nature of the issue they were called upon to try, and that the court should have granted the motion for a new trial for that reason if for no other.

We refrain from expressing any opinion upon the weight of the testimony, further than to observe that it leaves grave doubts on the mind as to the sanity of the defendant when he committed the offense with which he was charged. The stupid forgery, so easily and readily detected, seems to be one which no sane man would commit. He remained at home after the crime was committed, and repeated the offense a very short time before he was arrested on this charge. It appeared that he had had an epileptic fit, also, the night before the day he committed the offense set forth in the information. His uniform good reputation as to integrity and honesty cannot, and should not, under the circumstances, be wholly disregarded; and the testimony of the medical witnesses as to the indisputable effect of the sickness from which he had suffered for years upon the mental and moral powers is so strong and consistent that

we feel confident the cause of justice will be promoted by further judicial investigation. The verdict on the main issue naturally followed that on the special issue, as there was really no defense on the proof, except that the defendant was legally irresponsible when he committed the crime with which he was charged.

*By the Court.*— The judgment of the municipal court is reversed, and the cause is remanded for a new trial.