STATE EX REL. LA FOLLETTE, Attorney General, and another, Petitioners, v. RASKIN, Circuit Judge, Respondent.

*March 3—May 9, 1967.*

608

611

For the petitioners the cause was argued by *Gerald P. Boyle,* deputy district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney. *Allen L. Samson,* assistant district attorney, also argued.

For the respondent there was a brief by *James M. Shellow* and *Shellow, Shellow & Coffey,* all of Milwaukee, and oral argument by *James M. Shellow.*

HALLOWS, J.   Alexander William Shoffner, Jr., was convicted of the crimes of armed robbery, arson, and burglary on his pleas of not guilty and not guilty by reason of insanity. Those convictions were reversed by this court and the cause remanded for further proceedings. *State v. Shoffner* (1966), 31 Wis. (2d) 412, 143 N. W. (2d) 458. In that case for the third time [1] this court considered arguments for a modification of the legal test of insanity, but a majority of its members was unwilling to abandon the *M'Naghten* rule. However, it was decided by another majority of the court that the defendant on his special plea of not guilty by reason of insanity would have an election either to be tried under the *M'Naghten* rule as modified in the *Esser Case* or to be tried under the insanity rule of sec. 4.01 of the Model Penal Code of the American Law Institute. In the latter event the defendant waives the statutory burden of proof upon the state by virtue of sec. 957.11 (2), Stats.,[2] and assumes the burden of convincing the jury of his insanity to a reasonable certainty by the greater weight of the credible evidence.

---

[1] See also *Kwosek v. State* (1960), 8 Wis. (2d) 640, 100 N. W. (2d) 339; *State v. Esser* (1962), 16 Wis. (2d) 567, 115 N. W. (2d) 505.

[2] "The presumption of the defendant's sanity and mental normality at the time he committed the alleged crime shall prevail on the trial of the special issue unless the evidence creates in the minds of the jury reasonable doubt of his sanity or mental responsibility at said time."

Upon remand, Shoffner chose to be tried under the A. L. I. rule of insanity and the trial court pursuant to sec. 957.27 (1), Stats., the compulsory mental-examination act, appointed Dr. William Studley and Dr. Joseph Weber to examine Shoffner on his special plea of insanity. Upon Dr. Studley's statement to the court that it was necessary that he examine Shoffner concerning the commission of the offense with which he was charged and his past prior criminal conduct,[3] Shoffner moved for an order vacating Dr. Studley's appointment; but this motion was denied. Dr. Joseph Weber requested his appointment to be vacated and this request was granted and Dr. Edward Schmidt was appointed in his stead. Drs. Studley and Schmidt attempted to make a psychiatric examination of Shoffner but upon the advice of his counsel, who was present at the examination with permission of the court,[4] Shoffner refused to answer many of the questions asked by invoking his privilege against compulsory self-incrimination.

A motion was made by Shoffner to have the issue of his criminal responsibility under his plea of not guilty determined first and the proof adduced in a sequential manner so that the jury would not be informed of his special plea of insanity, and no psychiatric testimony be taken thereon until a verdict of guilty had been returned on the issue of his guilt or innocence. Although the trial court had previously denied Shoffner's motion for a bifurcated or split trial or what the court considered to be two separate trials, it granted this motion for what was characterized as a sequential order of proof in a continuous trial. The state of Wisconsin promptly petitioned for and this court granted leave to bring this action for a writ of prohibition.

---

[3] This included some 44 charges of burglary.

[4] As to the right to have counsel at such an examination, see *State v. Snyder* (1966), 180 Neb. 787, 146 N. W. (2d) 67; also Anno. Physical Examination of Party, 7 A. L. R. (3d) 881.

Thus the question is presented whether the constitutional guarantee of a fair trial under the due process clause requires a trial court, in a criminal case where the defendant enters a plea of not guilty and a special plea of not guilty by reason of insanity and asserts he has a privilege against compulsory self-incrimination to the inquiries of a court-appointed psychiatrist, to so control the order of proof as to have presented sequentially to the jury the question of guilt first and then if necessary the issue of criminal responsibility under the special insanity plea. The state argues that under sec. 957.11, Stats.,[5] such a bifurcated trial is not permitted, that there is no necessity for such trial, that no constitutional issue is presented because of a compulsory mental examination and in any event there has already been a finding of guilty in this case and hence no prejudice can attach from the admission of inculpatory statements. We think only the first argument has arguable merit.

The respondent contends sec. 957.11 (1), Stats., does not prohibit a bifurcated trial in the sense of a sequential order of proof before the same jury and to try Shoffner on both issues of insanity and guilt concurrently violates his constitutional right to a fair trial guaranteed him by sec. 8, art. I, of the Wisconsin constitution and by the Fourteenth amendment to the United States constitution.

While some cases refer to a "bifurcated trial," "split trial," "two-part trial," or a "trial with a sequential order

---

[5] "957.11 **Plea of insanity as defense.** (1) No plea that the defendant indicted or informed against was insane or feeble-minded at the time of the commission of the alleged crime shall be received unless it is interposed at the time of arraignment and entry of a plea of not guilty unless the court for cause shown otherwise orders. When such plea is interposed the special issue thereby made shall be tried with the plea of not guilty; and if the jury finds that the defendant was insane or feeble-minded or that there is reasonable doubt of his sanity or mental responsibility at the time of the commission of the alleged crime, they shall find the defendant not guilty because insane or feeble-minded."

of proof" indiscriminately, such terms are not necessarily synonymous. A bifurcated trial or a split trial, as opposed to a unitary trial, sometimes mean complete separate trials before the same or different juries resulting in partial determinations of the controversy. While they are not common they are not unknown in the law. 23 C. J. S., Criminal Law, p. 754, *et seq.*, sec. 940 (7). Insurance-coverage questions are sometimes tried separate from the issue of negligence and damages. See sec. 260.11 (2), Stats. A split trial results when this court reverses and grants a retrial on one of the issues while affirming another issue. Ultimately, if there is a recovery, the result may be based on two partial verdicts and two separate trials by two separate juries. Recently much has been written for a split trial of the negligence and the damage issues in automobile-accident cases.[6] Bifurcation has been less common in criminal cases but the demands of a fair trial have caused some 30 states to make provision by statute in recidivist cases for the separation of evidence of prior convictions on the enhanced sentence issue from the issue of guilt on which the defendant is currently being tried. *Spencer v. Texas* (1967), 385 U. S. 554, 87 Sup. Ct. 648, 17 L. Ed. (2d) 606 (dissenting opinion of WARREN, C. J., note 11).

The question of a fair trial is raised in the instant case in the context of a compulsory mental examination and the privilege against compulsory self-incrimination. It is argued that if the compulsory mental examination includes confessions or inculpatory statements of the accused they are admissible on the insanity issue but their collateral effect on the guilt issue is so fatal and preju-

---

[6] See Civil Rule 21, Federal District Court Northern District, Ill. 2 Fed. Rules Service (2d) p. 1048 (1960); Miner, Court Congestion: A New Approach. 45 American Bar Association Journal, Dec. 1959, p. 1265; Weinstein, Routine Bifurcation of Jury Negligence Trials: An example of the questionable use of Rule Making Power, 14 Vanderbilt Law Review (1961), 831.

dicial even under instructions to the jury to disregard the statements for such purpose as to deny the fundamental fairness required by due process in the trial. Hence in order to insure a constitutionally fair trial the two issues must be tried and determined separately and independently of each other. This contention would pose no great procedural problem excepting for sec. 957.11, Stats., which on its face requires the special plea of insanity to be interposed at the time of arraignment and "shall be tried with the plea of not guilty."

This section has a long history in Wisconsin which furnishes the interpretative background of the phrase "tried with the plea of not guilty." Prior to 1878 the two issues were tried together, at least the statutes made no reference to split trials. See sec. 13, ch. 148, R. S. 1849; sec. 11, ch. 179, R. S. 1858; *State v. Wilner* (1876), 40 Wis. 304. But in that year secs. 4697, 4698, 4699, ch. 191, R. S. 1878, were enacted and provided for a split trial in which the insanity issue was tried first and if the accused was found sane he was then tried on his plea of not guilty before the same jury. No proof of insanity could be offered on the guilt issue. Sec. 4699. If the jury determined the accused was insane at the time of the offense or there was reasonable doubt of his sanity, the jury would further find if he was currently sane and if he was he would be freed. However, if he was found to be still insane at the time of the trial he was sentenced to a mental hospital under sec. 4698. The reason given for the statute was that the issue of insanity was difficult of determination and should not be further complicated and confused with the evidence on the issue of guilt. (Supplement to the Revised Statutes of Wisconsin (1878), Revisor's Notes, Sanborn & Berryman, pp. 891, 892.

The section came under constitutional attack as not providing a common-law impartial jury trial in *Bennett v. State* (1883), 57 Wis. 69, 14 N. W. 912. Holding the

section constitutional the court pointed out the so-called bifurcation of the criminal trial went only to the form of the trial and not to the substance and the trying of the two issues separately was to be treated as one trial within the meaning of the requirement of a common-law trial by jury. By ch. 164, Laws of 1883, sec. 4697 was amended to provide that if a jury did not agree on the insanity issue, then a new jury was to hear both the issues of not guilty and of insanity together. However, in the first instance the issue of insanity was to be tried first and kept distinct and separate from the issue of guilt. In *Hoiss v. State* (1891), 79 Wis. 513, 48 N. W. 517, the two issues were not kept separate at the trial and the court reversed the conviction and held the jury in trying the insanity question misconceived the nature of that issue and actually tried the guilt of the accused. In *French v. State* (1893), 85 Wis. 400, 55 N. W. 566, a reversal resulted because the jury had disagreed on the insanity issue and therefore under the statute was disqualified from passing on the question of guilt. The court held that the jury having once disagreed on the insanity issue was no longer a fair and impartial jury for the trial of the plea of not guilty which would then include the issue of insanity and such procedure was a violation of the accused's constitutional rights. The accused was again tried and the jury again disagreed on the insanity issue, but this time the jury was discharged. Another jury was impaneled to try the accused on both issues and the defendant requested the court to proceed first only on the special plea as it would in the first instance but this motion was denied. The jury found the defendant sane and guilty. On appeal this court held the denial of the motion was not error.

The statute was again amended to provide the same jury could hear the issue of guilt but after passing upon the special insanity plea and in *Schissler v. State* (1904), 122 Wis. 365, 99 N. W. 593, an attack was made on the

constitutionality of this section. The court held the jury which had passed upon the special issue of insanity and found the defendant sane was not incompetent to try the main issue of guilt or innocence and the statute did not violate the right to trial by jury. In addition, the court held the separate hearing of the two pleas in a single continuous trial did not give the defendant a right, after the jury passed upon the special issue of insanity, to reexamine the members of the jury as to their qualifications to try the remaining issue of guilt.

In 1911 the legislature turned away from split trials and by ch. 221, Laws of 1911, amended sec. 4697 to provide that a special plea of not guilty by reason of insanity "shall be tried and determined by the jury with the plea of not guilty." Later the words "and determined by the jury" were eliminated and the section has remained substantially unchanged to the present. We think from this history the intent of the legislature is clear that the plea of not guilty and the plea of insanity are to be tried concurrently and not in a split trial. However, even under the present practice when the two pleas are tried concurrently the not guilty plea is to be determined by the jury in its deliberations first and the jury is instructed not to consider the defendant's special plea of insanity before it finds the defendant guilty beyond a reasonable doubt of having committed all the essential elements of the crime. See Wisconsin Criminal Jury Instruction No. 600.

The fair trial problem can only arise if the mandatory mental examination requires the accused to disclose information which otherwise would be protected by the Fifth amendment. Under the compulsory mental-examination statute (sec. 957.27, Stats.) [7] when expert-opinion

---

[7] "957.27 Expert witnesses. (1) EXPERTS TO BE APPOINTED BY JUDGE. Whenever, in any criminal case, expert opinion evidence becomes necessary or desirable the judge of the trial court may after notice to the parties and a hearing, appoint one or more dis-

evidence is desirable or necessary in a criminal case the trial court may appoint not more than three disinterested qualified experts to testify at the trial and the fact of their appointment by the court shall be made known to the jury. This section contemplates the defendant may be sent to a hospital for examination. The court may also limit the number of expert witnesses used by the parties and sub. (2) provides no testimony regarding the mental condition of the accused shall be received from witnesses summoned by the accused until the expert witnesses summoned by the prosecution have been given an opportunity to examine and observe the accused if such opportunity shall have been seasonably demanded. Such a demand was made in the instant case.

We think this section should be construed to require a mental examination which is efficient and complete and not limited by constitutional restrictions or dependent upon the waiver of the accused's constitutional right not to give incriminating answers during the examination. There is no reason why a compulsory mental examination should be restricted and its purpose impaired if the constitutional rights of the accused can be protected by restrictions in the use of the examination. A critical analysis of this problem is made in Nuernberg, Compulsory Mental Examinations and the Privilege Against Self-Incrimination, 1964 Wisconsin Law Review, 671.

Sec. 957.27, Stats. (then sec. 357.12), was determined to be constitutional in *Jessner v. State* (1930), 202 Wis. 184, 231 N. W. 634, 71 A. L. R. 1005, but we put the constitutional issue on the rather limited grounds the mental examination did not require testimonial responses

interested qualified experts, not exceeding three, to testify at the trial. . . . The fact that such expert witnesses have been appointed by the court shall be made known to the jury, but they shall be subject to cross-examination by both parties, who may also summon other expert witnesses at the trial, but the court may impose reasonable limitations upon the number of witnesses who may give opinion evidence on the same subject."

of the accused and was no more than an observance of physical facts which under this court's interpretation of the scope of the privilege against self-incrimination was permitted. The court weakened this ground of its decision by also concluding the defendant did not object to the examination and therefore consented to it or at least waived his constitutional rights. The restriction of the scope of the examination to protect constitutional rights or the waiver doctrine is not a satisfactory solution to the conflict between a full-scope compulsory examination, the privilege against self-incrimination and a compulsory unitary trial of the issues of guilt and insanity. In the instant case Dr. Studley testified he could not come to an expert opinion of Shoffner's insanity without interrogating him on the crime charged and on his prior criminal conduct. Under such circumstances the mental examination should not be restricted and rendered ineffective and useless, but a full and complete examination including testimonial responses should be had and the accused's rights against the prejudice of his answers being used on the issue of guilt should be protected at the trial.

Of course, if the compulsory mental-examination statute is restricted to only testimony which does not come within the scope of self-incrimination, then no constitutional issue is presented and the validity of the statutes of some of the other states providing for compulsory psychiatric examination of the accused has been put on this ground. See Anno. Criminal Law—Psychiatric Examination, 32 A. L. R. (2d) 434; Anno. Statutes—Validity—Plea of Insanity, 67 A. L. R. 1451; 21 Am. Jur. (2d), Criminal Law, p. 389, sec. 365. The state of Colorado has held that its statute which authorizes the examining physician to testify as to the patient's statements and reasons in a unitary trial did not require the defendant to cooperate to the extent of divulging incriminating information and he could not be penalized for

insisting upon his right against self-incrimination by striking the plea. *French v. District Court* (1963), 153 Colo. 10, 384 Pac. (2d) 268. A similar result was reached in *People v. Ditson* (1962), 57 Cal. (2d) 415, 20 Cal. Rptr. 165, 369 Pac. (2d) 714. In *Ditson* the doctors testified on the plea of not guilty concerning inculpatory statements made to them by the defendant in the course of the mental examination. The court held the defendant, not having objected to the questions during the examination and having answered them for the doctor, did so voluntarily, but the court also held the defendant was not compelled to submit himself to interrogation. See also *People v. Combes* (1961), 56 Cal. (2d) 135, 14 Cal. Rptr. 4, 363 Pac. (2d) 4, in which the court said the defendant can stand mute during the examination if he wishes and if he submits and speaks he does so voluntarily, but in any event he is not forced to incriminate himself. In *State v. Olson* (1966), 274 Minn. 225, 143 N. W. (2d) 69, it was held a trial court cannot compel an examination which includes inculpatory testimonial answers on the ground of the absence of a statute which permitted it. A somewhat different solution was found in *State v. Myers* (1951), 220 S. C. 309, 67 S. E. (2d) 506, 32 A. L. R. (2d) 430, wherein the accused was committed to a state hospital for an examination of his mental condition upon his plea of insanity; the court held the authorities of the institution could not, over the protest of the accused, reveal any confession made by him or declarations implicating him in the crime charged.

Failure to object to the mental examination has been held to constitute sufficient consent to amount to a waiver of the privilege against self-incrimination, but such expressions are generally found in the older cases and do not treat such consent factually as later cases do for waiver of the right to counsel or for determining voluntariness of a confession. Such waivers are not now to be lightly inferred. *Emspak v. United States* (1955), 349

U. S. 190, 75 Sup. Ct. 687, 99 L. Ed. 997. The mere failure to object to a mental examination should constitute no more than submission in respect for duly constituted authority.

It is argued also by the state the filing of the plea of insanity waives any privilege of self-incrimination and therefore the accused must answer questions in the examination even though the responses may be incriminatory. We do not agree. This concept puts a *quid pro quo* or price tag on the assertion of the plea of insanity. The right to this defense whether pleaded specially or under the general plea of not guilty had its roots in ancient common law long before the creation of our compulsory mental-examination statute.

As stated in *Jessner,* page 187, the purposes of compulsory examination grew out of the conviction that under the prior existing procedure "there was a striking tendency on the part of experts to accommodate their opinions to the necessities of that side of the case upon which they were testifying, and that such opinions were to a very large extent prejudiced and unreliable. To secure the reliable and unprejudiced opinions of the ablest experts in such cases, to the end that the purest degree of justice might be promoted," the statute was sponsored and enacted. To obtain the full benefit of compulsory examination we think it should not be limited in scope to the observation of physical characteristics of the subject but may encompass inquiries concerning past conduct of the accused and requires testimonial response to questions which would be within the privilege of self-incrimination. The submission to such an examination under the plea of insanity should not constitute a waiver of privilege against self-incrimination. When it appears any inculpatory statements have been made by the accused during the examination, he should have his privilege against self-incrimination recognized and protected at the trial by a sequential order of proof so that such

evidence will not be admitted while the jury is determining the issue of guilt.

We think sec. 957.11 (1), Stats., cannot be applied to require the trial of the issue of guilt and the issue of insanity concurrently where the psychiatric testimony, whether direct or on cross-examination, will disclose inculpatory statements made during the compulsory mental examination. Such an application of the section would render the trial unfair and violate the accused's constitutional right to due process. An analogous problem of the unfairness of a trial in the commingling of issues is encountered in recidivist cases, and while it has not been uniformly held that due process requires a separation of such issues, we think the tendency is correctly in that direction. The two issues should be separated when it is necessary to avoid confusion and prejudice to the jury from inculpatory statements which were not given or intended to be used on the issue of guilt.

In *Spencer v. Texas, supra,* the Texas procedure allowed the jury to try concurrently the issue of guilt and to fix the penalty which depended upon prior convictions under a repeater statute; Spencer objected to the introduction of evidence showing his prior conviction of murder with malice, but the court considered the defendant's interest in freedom from prejudice to be outweighed by the validity of the state's purpose and was protected by giving the jury instructions on the limited use of such evidence. Importantly, however, the court stated the due-process clause of the federal constitution did not establish the supreme court as a rule-making organ for the promulgation of state rules of criminal procedure. This view does not foreclose but rather enhances what a state court should do under its constitution to provide a fair trial in such cases.

In Wisconsin the practice under our repeater statute (sec. 959.12, Stats.) has generally been not to put the proof of prior crimes before the jury. The older version

of the statute allowed in some cases a determination by a jury of the fact of prior convictions. *State v. Meyer* (1951), 258 Wis. 326, 46 N. W. (2d) 341. The present statute, last amended by ch. 422, Laws of 1965, requires the fact-finding of prior convictions to be done by the court as part of the sentencing procedure. But even under the older statute a provision was made for a stipulation to the convictions, thus obviating the necessity of placing the issue before the jury.

The unfairness of trying the issue of guilt with a collateral issue of an enhanced sentence has been recognized in some 30 states whose recidivist procedure prohibits the introduction of prior convictions until after the jury has found the defendant guilty of the crime currently charged. "In England, the prejudice which results from proof of prior crimes before a finding of guilt has been recognized for more than a century, and the rule has been that a finding as to prior crimes is made in a separate hearing after the finding of guilt." *Spencer v. Texas, supra,* dissenting opinion of WARREN, C. J., 385 U. S. at page 586. Even the statute upon which *Spencer* rests has now been abrogated. See Texas Penal Code, Art. 36.01, effective January 1, 1966.

Some United States courts of appeal have adopted the view that recidivist procedure authorizing the admission of prior-conviction evidence before the jury determines the defendant is guilty is so fundamentally unjust as to be a violation of due process. *Lane v. Warden, Maryland Penitentiary* (4th Cir. 1963), 320 Fed. (2d) 179; *United States ex rel. Scoleri v. Banmiller* (3d Cir. 1962), 310 Fed. (2d) 720; *United States ex rel. Thompson v. Price* (3d Cir. 1958), 258 Fed. (2d) 918. But see *Pope v. United States* (8th Cir. 1967), 372 Fed. (2d) 710.

In *United States v. Curry* (2d Cir. 1965), 358 Fed. (2d) 904, the majority stresses the failure of the defendant to object to a unitary trial or move for severance of the guilt and punishment issues and left the question

of a two-stage trial to the discretion of the court. The question of the fairness of a unitary trial split the court sitting *en banc* in *Frady v. United States* (D. C. Cir. 1965), 348 Fed. (2d) 84, certiorari denied (1965), 382 U. S. 909, 86 Sup. Ct. 247, 15 L. Ed. (2d) 160. The weight of modern authority calls for a mandatory two-stage-trial rule where the trying of the enhanced-punishment issue or other collateral issue will prejudice the determination of the issue of guilt. See cases cited in *United States v. Curry, supra,* dissenting opinion of HAYS, J., 358 Fed. (2d) at 920. See also Model Penal Code, sec. 210.6 (May 4, 1962 draft) ; 1 Wigmore, Evidence (3d ed.), pp. 660, 661, sec. 194b; cf. *Jackson v. Denno* (1964), 378 U. S. 368, 389, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908.

While on facts like the instant case the United States supreme court has not compelled a two-part trial as a matter of constitutional law or as a matter of federal procedure, it has been held that the Federal Rules of Criminal Procedure do not prevent a bifurcated trial or require a unitary trial in those cases where such substantial prejudice would result from the simultaneously trying of the pleas of insanity and not guilty as to render the trial unfair. In *Holmes v. United States* (D. C. Cir. 1966), 363 Fed. (2d) 281, the court considered the solution to the problem as essentially one of controlling the submission of the issues to the jury which was the court's common-law right. We think the unfairness is greater and more apparent in the instant type of case than in a recidivist case. The admissions and statements made by defendant to the medical expert once heard by the jury considering the guilt issue cannot effectively be erased from their minds and limited to the issue of insanity. Such evidence by its very nature is so prejudicial it cannot be cured in a realistic sense by instructions. See *Nash v. United States* (2d Cir. 1932), 54 Fed. (2d) 1006, and *United States v. Pugliese* (2d Cir. 1945),

153 Fed. (2d) 497. This same reasoning was applied in *Jackson v. Denno, supra,* and very early in this state in *Shephard v. State* (1894), 88 Wis. 185, 59 N. W. 449, as to the prejudicial effect of an inadmissible confession on the issue of guilt. Applicable to a confession once heard by a jury are the words of Mr. Justice JACKSON: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, . . . all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States* (1949), 336 U. S. 440, 453, 69 Sup. Ct. 716, 93 L. Ed. 790; *United States ex rel. Scoleri v. Banmiller, supra.*

By solving the constitutional issue through procedural control of the trial many other problems are avoided. A bifurcated trial eliminates problems which usually occur during examination and cross-examination of the expert witness concerning the basis of his opinion. Since the issue of guilt is not present, the procedure which invites the improper use of evidence for its collateral effect is eliminated. The sequential order-of-proof procedure should also eliminate any claim under sec. 957.27 (2), Stats., of lack of cooperation between the accused with the prosecution experts. Under this section the accused must make himself available for examination upon demand of the prosecution or he may be unable to adduce evidence of his own expert witnesses. Examination by the prosecution witnesses should be governed by the same rules as examination by court-appointed experts. Bifurcation will also eliminate questions arising not only from proof but also from comment. See *Griffin v. California* (1965), 380 U. S. 609, 85 Sup. Ct. 1229, 14 L. Ed. (2d) 106; *Malloy v. Hogan* (1964), 378 U. S. 1, 84 Sup. Ct. 1489, 12 L. Ed. (2d) 653. The necessity of a fair trial, however, requires only a sequential order of proof based on a separation of the issues before the same jury in a continuous trial; the guilt issue will be heard first and only one *voir dire* examination of the jury covering both issues will be had. No separate appeal is to be

allowed from first issue tried or motions heard thereon until the second issue is determined. The jury should be informed at the outset of the two pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the special plea of insanity which issue should not be submitted to the jury in the terms of "guilty" or "not guilty by reason of insanity" but as a factual question whether the defendant was insane at the time he committed the act. Such inquiry permits a yes or no answer in the jury's verdict and avoids the possibility of what might be considered an inconsistent verdict. Such form of verdict is permitted by sec. 957.11 (1), because that section does not prescribe the form of the verdict upon the special plea but requires only that the question of insanity shall be submitted in some form. *Steward v. State* (1905), 124 Wis. 623, 102 N. W. 1079.

We hold, therefore, when the accused who was subjected to a compulsory mental examination can show a disclosure of inculpatory statements, admissions or confessions in response to questions of the examining doctor, he is entitled to ask for a sequential order of proof on the issues of guilt and insanity in order to assure himself of his constitutional rights of a fair trial, and such compulsory statements and confessions can only be used on the issue of insanity and not in any way upon the issue of guilt.

We think the trial court should vacate its order for a bifurcated trial because it is too broad and beyond what is now permitted in this opinion. The court should also require Shoffner to resubmit himself to a mental examination since his refusal to answer certain questions limited the permissible scope of the examination. At such examination, Shoffner's counsel is not entitled to be present as there is no need for advice to claim at that time any constitutional rights against self-incrimination. If after such examination the record discloses grounds

for a trial with a sequential order of proof, Shoffner may reapply to the trial court.

Since this case has the stature of a test case to raise the question of the power of the trial court to separate in a criminal trial the issues of guilt and insanity under sec. 957.11 (1), Stats., and since we hold the court has such power in certain circumstances, the writ should not be granted.

*By the Court.*—Writ of prohibition denied.

HANSEN, J., took no part.