Argued January 4, peremptory writ ordered March 3, 1977

STATE ex rel JOHNSON, *Plaintiff-Relator,*
*v.*
DALE, *Defendant.*
(SC 24728)
560 P2d 650

W. Michael Gillette, Solicitor General, Salem, argued the cause for plaintiff-relator. With him on the brief were Lee Johnson, Attorney General, and Catherine Allan, Assistant Attorney General, Salem.

Nely L. Johnson, Metropolitan Public Defender, Portland, argued the cause and filed a brief for defendant.

Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Linde, Mengler, and Bradshaw, Justices.

HOLMAN, J.

## HOLMAN, J.

This is a proceeding in mandamus originated in this court by the state to require defendant Dale, a circuit court judge, to vacate an order granting a bifurcated trial in a criminal case with a separate factfinder for each part of the trial.

One Johann was charged with rape and with two counts of sodomy. He pleaded not guilty and gave notice of his intent to rely on the defense of lack of responsibility due to mental disease or defect (ORS 161.295)[1] and on the defense of partial responsibility due to mental disease or defect (ORS 161.300).[2] Thereafter the state exercised its right under ORS 161.315 to a mental examination of Johann. After the examination Johann filed a motion to bifurcate the trial. He applied for a *jury trial* on the issue of "guilt or innocence" and, if necessary, for a *trial before the judge* on the issue of his mental responsibility for his acts. Thus, his application sought not only a bifurcated trial but also separate factfinders for each part thereof. The motion was allowed by the defendant trial judge.

Defendant contends that under Article I, sections

---

[1] "Effect of mental disease or defect. (1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

[2] "Evidence of disease or defect admissible as to intent. Evidence that the actor suffered from a mental disease or defect is admissible whenever it is relevant to the issue of whether he did or did not have the intent which is an element of the crime."

$11^3$ and $12^4$ of the Oregon Constitution, Johann is entitled to such a trial. Although defendant does not cite them in his brief, by inference from his argument he depends upon the Fifth and Fourteenth Amendments of the United States Constitution. Basically, his position seems to be that under the circumstances here and in the absence of the allowance of the motion Johann would be (1) forced to incriminate himself and (2) deprived of due process because of the lack of a fair trial.

We must first decide whether Johann is in sufficient danger, because of his forced submission to a mental examination, of incriminating himself to justify a bifurcated trial. This depends upon whether adequate protection against self-incrimination is afforded to Johann under Oregon law in the event of a unitary trial.[5]

As near as we can determine from the present

---

[3]  "Rights of accused in criminal prosecution. In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to by tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

[4]  "Double jeopardy; compulsory self-incrimination. No person shall be put in jeopardy twice for the same offence (sic), nor be compelled in any criminal prosecution to testify against himself."

[5] It is reasonably clear from the legislative history that the legislature, in drawing the criminal procedure code of 1973, recognized the possibility of providing for a bifurcated trial where pleas of mental defect were made in criminal cases and that it did not choose to provide for such proceedings. Yet, there is nothing that specifically prohibits a judge from granting a bifurcated trial.

record, Johann, upon advice of counsel, allowed the state's psychiatrist to examine him concerning the facts *surrounding the alleged crime* before he filed his motion for a bifurcated trial. If he voluntarily chose to submit to an examination upon such facts, he should not thereby be placed in any better position than he would have enjoyed had he asserted any right he might possess to decline to be so examined on such facts.

This court has recognized that a very real risk exists that through an examination by the prosecution's psychiatrist damaging information will reach the prosecution concerning defendant's actual commission of the acts which are the basis for the charges. This court has attempted to solve this problem in a trilogy of cases. The first case, *State v. Phillips,* 245 Or 466, 475-76, 422 P2d 670 (1967), was decided before the enactment of ORS 161.315, which gives the state the right to a psychiatric examination upon a plea of mental defect. Nevertheless, even then we held that the state was entitled to such an examination, citing with approval the following language from *State v. Grayson,* 239 NC 453, 80 SE2d 387, 390 (1954):

> "* * * The constitutional privilege against self-incrimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt, and in better reasoned cases it does not extend to the exclusion of his body or of his mental condition as evidence when such evidence is relevant and material, even when such evidence is obtained by compulsion. * * *."

The defendant in *Phillips* was not, however, to be asked any questions relating to the facts of the claimed crime during the examination which was ordered by the trial court, approved by this court, and which defendant's counsel was given permission to attend.

The second case was *Shepard v. Bowe,* 250 Or 288, 442 P2d 238 (1968). The defendant had been ordered

by the trial judge to submit to a psychiatric examination which included questions concerning conduct relating to the offense charged. The opinion characterized *Phillips* as holding that at least a limited psychiatric examination "did not involve testimonial compulsion." Given the quotation from the *Grayson* case in *Phillips,* the idea is not that there is no "compulsion" but that there is no "testimony." In *Shepard* this court noted, however, that some answers to questions in an unlimited psychiatric examination could be incriminating upon issues in the trial other than a defendant's mental condition and that this was a danger sufficiently great to jeopardize the privilege against self-incrimination. The court specifically rejected the following solutions to the problem as being inadequate: (1) that the jury simply be instructed not to consider on the issue of guilt any incriminating statements made to the psychiatrist, and (2) that the psychiatrist be prohibited from testifying to any incriminating statements and from revealing such statements to the state or any other person. The court said, 250 Or at 293-94:

> "We conclude that the only way in which the constitutional right of the defendant not to be compelled to testify against himself can be adequately preserved is to hold that the defendant cannot be required to answer the questions which the trial court's order requires him to answer, and the restrictions placed upon defense counsel by the trial court's order must be removed.

> "We share the view of the court in *State v. Olson,* supra (274 Minn 225), that the right against self-incrimination is not adequately protected by instructing the jury that in determining the issue of guilt they cannot consider any incriminating statements the witness may have made to the psychiatrist.

> "Even if we prohibited the psychiatrist from testifying to incriminating statements made to him by the defendant in a pretrial mental examination, requiring the defendant to answer could nevertheless jeopardize the privilege against self-incrimination. The statements made by the defendant to the psychiatrist could provide a lead to other evidence which would incriminate the

[ 364 ]

defendant on the issue of guilt. If the trial court ordered that statements made by the defendant to the psychiatrist could not be revealed to the state or to any other person except upon court order, we are of the opinion that under certain circumstances there is more than a remote chance that such statements would become known to others in addition to the trial court.

"We are aware that in holding that the defendant cannot be compelled to answer the psychiatrist's questions we may be lessening the quality of the evidence available to the state. Psychiatrists have expressed the opinion that it is difficult, at least in some cases, to arrive at a competent opinion on the mental state of the defendant if the defendant cannot be questioned about the alleged crime. Krash, *The Durham Rule and Judicial Administration of the Insanity Defense in the District of Columbia,* 70 Yale L J 905, 918 (1961). We are of the opinion that this is a price that must be paid to enforce the constitutional protection."

In *State ex rel Johnson v. Richardson,* 276 Or 325, 555 P2d 202 (1976), this court held that a defendant raising such a defense may be compelled to answer a psychiatrist's questions not pertaining to the alleged commission of the crime, on penalty of having the insanity defense stricken, even though the answers to the questions could possibly lead indirectly to incriminating evidence. We said, 276 Or at 329:

"* * * We realize that the answers to the questions the psychiatrist asks may indirectly lead to evidence tending to incriminate the defendant. This consequence, however, is not sufficient to authorize the defendant not to answer these questions. The chance of the discovery of incriminating evidence must be weighed against the right of the people, as represented by the state, to present competent, persuasive evidence on the defense raised by the defendant.

"* * * * *

"In *Shepard v. Bowe, supra* (250 Or 288), we weighed the consequence of not requiring a defendant to answer questions about the commission of the crime against the lessened quality of psychiatric testimony caused by such limitation. We concluded that the chances of self-

incrimination were so great if questions about the crime had to be answered that we would have to restrict the state to less satisfactory psychiatric testimony. In this case, however, we find the reverse. The chances of self-incrimination are more remote and weigh less heavily than the totally inadequate psychiatric testimony that the state would be able to produce in most instances if the defendant did not have to answer any questions asked by the psychiatrist."

While some contend that any compelled communication by a defendant which is used to determine his mental condition, and which in turn may be used to defeat his defenses of mental incompetency, should be prevented as tending to incriminate him, few, if any, courts have so held. See Note, 11 Colum J of Law and Social Problems 403, 428-31 (1975). The one case which holds that a bifurcated trial is constitutionally mandated is *State v. Raskin,* 34 Wis2d 607, 150 NW2d 318 (1967). However, this holding was explicitly based upon the assumption that compulsory pre-trial psychiatric examinations would be unlimited and thus likely to elicit inculpatory statements. This assumption, as demonstrated, would be incorrect under Oregon law.

The defendant trial judge contends that he has the discretion to order a bifurcated trial under his authority to control the conduct of the trial and to direct the order of its proceedings, citing *State v. Gann,* 254 Or 549, 463 P2d 570 (1969), and cases with similar holdings. We do not believe that a trial judge in this state can properly exercise his discretion to allow a bifurcated trial because of self-incrimination considerations arising from a compulsory psychiatric examination by the state. Johann had available to him what we believe to be adequate protection against self-incrimination. In terms of efficient judicial administration, bifurcated trials are to be avoided unless there are adequate reasons therefor. We find no adequate reasons. We recognize that the trial judge has broad discretion under *Gann* to control the conduct of the trial and to direct the order of the proceedings;

nevertheless, we hold that the ordering of a bifurcated trial here for the purpose of avoiding a perceived danger of self-incrimination is an abuse of discretion. In policy matters which concern efficient judicial administration, this court necessarily has the premier hand.

■ As we said, Johann does not desire just a bifurcated trial. He also wants to have a separate factfinder for each part of such trial. He is not satisfied having the same judge or the same jury decide his fate on each issue. The following position was asserted by him in his motion before the trial judge:

> "Defendant moves this Court for an Order allowing defendant to separate the trial into a trial to the jury on the issue of criminal responsibility. The failure to so order would force the defendant to either try the case to the jury and waive the insanity defense, or to waive the jury trial and raise both defenses before the court, thus denying the defendant his due process rights and the right to a fair trial."

Evidently, the real reason for the request is that Johann has a record of conflict with society and authority, which includes being recently found not guilty of another crime by reason of mental disease or defect, all of which is relevant to the question of his mental condition. Johann obviously believes that a jury, given such a record, would take a jaundiced view of another plea of mental defect, whereas a judge might give it some consideration. On the other hand, he also is of the impression that a judge would give his defense of non-commission of the acts in question scant consideration, whereas a jury might consider it favorably. If he gets a bifurcated trial, he wants to try to a jury the issue of "guilt," and to waive a jury on the issue of his mental condition, thereby getting a judge to determine that question.

This contention raises a Fourteenth Amendment due process problem rather than a self-incrimination one. Because of Johann's record of past conflict, defendant apparently claims that Johann cannot have

a fair trial on either "guilt" or mental condition unless he has a separate factfinder on each of the two issues. Johann is not satisfied with the choice which is given to him by Article I, section 11, of the Oregon Constitution, which states that a defendant "with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone." His claim, which the defendant trial judge approved, is, in effect, that neither a jury nor a judge could fairly try both issues. We are not cited any cases where this precise contention has been made, and we know of none. If Johann has a Fourteenth Amendment right to have as a factfinder a jury for one part of his trial and a judge for another part, he could just as logically request separate juries or waive a jury and request separate judges. This procedure is so completely foreign to our constitutional and statutory schemes that it can be safely said not only that there is no specific provision for it, but also that it is beyond any discretion possessed by a trial judge under his authority to govern the conduct and procedure of the trial.

In many kinds of cases and situations, separate issues often pose embarrassing problems for litigants, but we are not cited any authority which holds that due process thereby entitles them to separate fact-finders for each issue. Defendant cites *State v. Sanchez,* 14 Or App 234, 511 P2d 1231, S Ct *rev denied* (1973), and *State v. Eusted,* 12 Or App 351, 507 P2d 60 (1973), in which separate trials were allowed. They are, however, inapposite. In *Eusted* indictments for separate crimes had previously been joined for trial and the defendant wished to testify in one and to remain silent in the other. In *Sanchez* the defendant moved for separate trials on improperly joined charges.

By analogy, language used in the case of *McGautha v. California,* 402 US 183, 91 S Ct 1454, 28 L ed 2d 711 (1971) (consolidated for appeal with *Crampton v. Ohio)* is appropriate. Crampton was convicted of murder and given the death penalty in a unitary trial in which the

jury decided both his guilt and the penalty. He contended that "the Due Process Clause of the Fourteenth Amendment required a bifurcated trial so that evidence relevant solely to the issue of punishment would not prejudice his case on guilt." Crampton, like Johann, had a poor past record, and this record became known to the jury on the issue of penalty. Crampton's argument for bifurcation was that "he enjoyed a constitutional right not to be compelled to be a witness against himself. Yet under the Ohio single-trial procedure, he could remain silent on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment," and that due process afforded him the "right to be heard on the issue of punishment and a right not to have his sentence fixed without the benefit of all the relevant evidence."[6] The Court's language, which we believe to be applicable by analogy, was:

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. * * *. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved. Analysis of this case in such terms leads to the conclusion that petitioner has failed to make out his claim of a constitutional violation in requiring him to undergo a unitary trial." 402 US at 213. (Citation omitted.)

If the policies behind due process do not require bifurcation (to say nothing of separate factfinders) in as serious a matter as the infliction of the death penalty in *McGautha (Crampton)*, it is difficult to visualize why due process would require bifurcation

---

[6] It is our understanding that in this case defendant is not contending that Johann is entitled to a bifurcated trial because he has a constitutional right to testify concerning the issue of his mental defectiveness while remaining silent on the issue of guilt. If it is part of his contention, the language of *McGautha* is directly applicable.

(or separate factfinders) when the defense of mental condition is involved. Although Johann has some difficult choices to make concerning whether he waives a jury, what defenses he asserts and what evidence he introduces (which choices are necessitated by his record of past conflict with authority), he is not thereby deprived of his constitutional rights to a fair trial.

Defendant contends that the issues here cannot be raised because it was conceded by the state in the trial court that he had the discretion to rule on Johann's motion as he did. Assuming that such a concession would prevent the subsequent issuance of a writ of mandamus, the record is not as clear as defendant indicates is the case. Although the state's attorney used language which, by itself, might justify such a contention, she also said:

> "It is not provided for in the statutes in a criminal case, and it is my position that to grant this would be an abuse of the court's discretion."

Defendant also contends that his actions were discretionary and that mandamus will not lie to interfere with his discretion. Whether his actions were within his discretion is one of the issues here. We have decided that he did not have such discretion.

A peremptory writ will issue.