617 P.2d 610 (1980)
289 Or. 695
STATE of Oregon ex rel. Calvin Roy Ott, Plaintiff-Relator,
v.
L.A. CUSHING, As Circuit Judge of the State of Oregon for Josephine County, Defendant-Respondent.
No. 80-522-C; SC 27199.
Supreme Court of Oregon, In Banc.[*]
Argued and Submitted September 9, 1980.
Decided October 7, 1980.
*611 Donald F. Myrick, Grants Pass, argued the cause and filed the brief for plaintiff-relator.
William F. Gary, Deputy Sol. Gen., Salem, argued the cause for defendant-respondent. With him on the brief were James M. Brown, Atty. Gen., and John R. McCulloch, Jr., Sol. Gen., Salem.
TONGUE, Justice.
This is a mandamus proceeding in which the petitioner, who is the defendant in a *612 criminal prosecution for the crime of murder, seeks to modify an order issued by the respondent, the trial judge before whom that proceeding is pending, which directed the defendant to submit to a psychiatric examination under conditions specified by the terms of that order.
Both attorneys for petitioner and attorneys for the State of Oregon, who represent the respondent, agree that the order in question was prepared in an effort to comply with the requirements of ORS 161.315[1] and also with the requirements of the rule stated by this court in Shepard v. Bowe, 250 Or. 288, 442 P.2d 238 (1968),[2] and that the validity of the rule as stated in that case is not in issue in this proceeding, despite subsequent doubts expressed by members of this court in State ex rel. Johnson v. Woodrich, 279 Or. 31, 566 P.2d 859 (1977).[3]
For that reason and because both the trial of the petitioner and his psychiatric examination preceding that trial have been postponed awaiting a decision by this court in this proceeding, we shall limit our opinion to a brief discussion of petitioner's objections to the terms of that order. The order provides as follows:
"(1) IT IS HEREBY ORDERED that the Defendant submit to a psychiatric examination by Dr. Jeffrey Thompson on August 5, 1980, at the hour of 10:30 O'clock A.M., in his office located at 2951 Doctor's Park Drive in Medford, Oregon.
"(2) IT IS FURTHER ORDERED that Dr. Thompson advise the Defendant that he is conducting the examination for and on behalf of the State of Oregon; that he is not examining Defendant for purposes of treatment and that the Defendant need not answer any questions concerning his acts or conduct at or immediately near the time of the commission of the offense. `At or immediately near the time of the commission of the offense' includes any acts or conduct bearing a proximate connection to the crime charged or of any other crime which acts *613 or conduct could in any way tend to incriminate the Defendant; by incrimination is meant any statement concerning any acts or conduct which involve him in the crime charged or any other crime;
"(3) IT IS FURTHER ORDERED that the Defendant is to answer all questions asked of him by Dr. Thompson and/or perform any tests given in the course of the usual psychiatric examination except as heretofore limited by specification II; and
"(4) IT IS FURTHER ORDERED that Donald F. Myrick, Defendant's attorney may be present at the examination and may advise the Defendant that he need not answer questions put to him by Dr. Thompson that fall within the limitations of specification II, but Donald F. Myrick is ordered not to advise the Defendant to remain silent to questions asked by Dr. Thompson which do not fall within the limitations of specification II; and
"(5) IT IS FURTHER ORDERED that if the Defendant or his attorney fail to act in accordance with the terms of this Order, in addition to any other sactions (sic), the Defendant shall not be entitled to introduce expert testimony on behalf of the Defendant on the issue of extreme emotional disturbance."
Petitioner's first objection to the order is that:
"a. The Order is permissive and not mandatory as to the attendance of petitioner's attorney at the psychiatric examination; and if such attorney did not attend, leaves the client at his peril, without effective representation, to determine which questions of the interrogator are, and which are not, incriminatory."
This court has not previously addressed the question of whether there is a right of either counsel to be present at a pretrial psychiatric examination concerning the defense of lack of responsibility due to mental defect.[4] Assuming, without deciding, that such a right exists, we are of the opinion that the right to effective counsel is adequately protected by a provision in the order permitting the defendant to have his attorney present at such examination and that there is no good reason to compel the attendance of his attorney at the examination.
Moreover, the right of a defendant to the assistance of counsel carries with it the correlative right to dispense with such assistance. Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). To require that the defendant's counsel be present at the psychiatric examination would violate this right. There may also be tactical reasons why a defendant would prefer to attend a psychiatric examination without the presence of his counsel. To compel the attendance of defendant's counsel might thus unnecessarily limit the defendant's own freedom in choosing an appropriate course of action for defending himself.
For these reasons, we believe the order is proper in permitting, but not requiring, defendant's counsel to be present at the examination.
Petitioner's second objection is that:
"b. If petitioner's attorney does attend the psychiatric examination, it puts such attorney for the defendant in peril of himself being adjudged guilty of contempt if he should erroneously advise silence to his client where there is error in judgment as to the incriminatory nature of the question; and therefore such attorney cannot properly discharge representation for his client as he could do if objections to questions were posed, and ruled upon, in a judicial forum."
We agree with petitioner's contention that his right to effective assistance by counsel may be impaired if his counsel is under a direct order "not to advise the defendant to remain silent to questions asked by Dr. Thompson which do not fall within the limitations of specification II," or be subject to possible punishment for contempt of court. That provision of the order not only might well result in a possible *614 "chilling effect" upon counsel in his effort to properly advise the defendant, but is also overly broad in that there may be questions other than those foreclosed by specification II which may be improper. This would place defendant's counsel in a difficult position when confronted by an improper question, but one which he has been ordered by the court not to advise the defendant not to answer.
We recognize, as contended by the state, that disobedience of an order by a court is not punishable as contempt unless such disobedience is willful. State ex rel. Oregon State Bar v. Wright, 280 Or. 713, 715, 573 P.2d 294 (1977). Despite that requirement, however, we are of the opinion that counsel for a defendant in such an examination may well be hesitant to advise the defendant to remain silent when it is uncertain whether a particular question falls within the parameters of specification II, so as to precipitate contempt proceedings against him. We also believe that it is unnecessary to place counsel for the defendant in such a position because the rights of the state are adequately protected by paragraphs (3) and (5) of the order, which provide that if a defendant improperly refuses to answer a question, the defense of extreme emotional disturbance can be stricken. Thus, if the defendant's counsel improperly advises his client to remain silent, those provisions of the order will apply.
For these reasons, paragraph (4) of the order should be modified to delete the provision beginning with "but Donald F. Myrick is ordered * * *." For similar reasons, the words "or his attorney" should be deleted from paragraph (5) of the order.
We do not agree, however, with petitioner's contention that the order should also provide for a procedure under which there may be immediate rulings on objections by counsel to questions asked during the psychiatric examination. In State ex rel. Johnson v. Woodrich, supra, this court reviewed various alternatives to the rule in Shepard v. Bowe, supra, and in rejecting the possible use of a bifurcated trial noted that efficient judicial administration is an important consideration in such cases. For similar reasons, we believe that a procedure requiring immediate rulings on objections would be inconsistent with efficient judicial administration and that such a procedure would impose an unnecessary burden upon the courts.
More importantly, we believe that providing for immediate rulings on objections to questions would greatly hinder the effectiveness of the psychiatric examination. In State ex rel. Johnson v. Richardson, 276 Or. 325, 329, 555 P.2d 202 (1976), we stated that the rights of the defendant must be weighed against "the right of the people, as represented by the state, to present competent, persuasive evidence on the defense raised by the defendant." We disagree with petitioner's contention that providing immediate rulings on objections can be achieved without unfairly impinging upon the effectiveness of the medical examination. In our opinion, such a procedure would cause intrusions and delays that would make it difficult, if not impossible, for the examiner to adequately evaluate the defendant's mental state.
We do agree, however, with petitioner's contention that some means should be provided to ensure that there is no controversy over what questions were asked, what answers were given to such questions, and what, if any, objections were made to questions which were not answered. For that reason, we believe that the order should therefore be modified so as to include a provision to the effect that there should be a tape recording of the examination as proposed by petitioner.[5]
Petitioner's third objection is that:
"c. If silence is erroneously advised to the client, the petitioner may suffer unfair consequence of being deprived of the benefit of his claimed defense."
*615 In State ex rel. Johnson v. Richardson, supra at 328-29, 555 P.2d 202, this court held that a defendant should be required to answer questions not pertaining to the commission of the crime, and that if the defendant refuses to do so, the affirmative defense of mental defect will be stricken. We held that such a rule represented a proper balance between protecting a defendant from self-incrimination and ensuring that the state has sufficient information from which to properly diagnose defendant's mental condition. To not impose such a sanction would allow defendant to totally frustrate the purpose of the psychiatric examination by refusing to answer questions that pose little threat of self-incrimination, but are necessary to an adequate understanding of the defendant's mental state.
It is true that a defendant might in good faith refuse to answer a question and thereby jeopardize the availability of an insanity defense. This might even result from the mistaken advice of defendant's legal counsel, as argued by petitioner. We see no escape, however, from the rule as stated in Richardson that refusing to answer a proper question requires forfeiture of the defense of mental defect. The purpose of the rule, to ensure that the state examiner acquires adequate information on which to accurately evaluate the defendant's mental state, is the same whether the defendant refuses to answer in bad faith or innocently refuses to answer due to mistaken legal advice. In the latter instance the defendant must bear the consequences of the mistaken legal advice just as any defendant in a criminal trial must bear the consequences of mistakes by his attorney, provided, of course, that the attorney is not incompetent.
For these reasons, we believe that the order is not improper in providing that if the defendant fails to act in accordance with the terms of the order, he shall not be entitled to introduce expert testimony on the issue of extreme emotional disturbance.
The respondent is directed to modify the order which is the subject of this proceeding in accordance with this opinion, and upon such modification the alternative writ of mandamus shall be dismissed.
LINDE, J., concurred and filed opinion.
TANZER, J., concurred and filed opinion in which HOWELL, J., joined.
LINDE, Justice, concurring.
In the order at issue here, quoted in the Court's opinion, the circuit court ordered a defendant who is charged with murder to "answer all questions asked of him" by the state's psychiatrist, other than "questions concerning his acts or conduct at or immediately near the time of the commission of the offense." The defendant was ordered to answer these questions even though the same order begins by recognizing that the questioner is acting "for and on behalf of the State of Oregon" in a criminal prosecution and that the defendant is so informed. In my view, a court order that compels a person to answer questions on behalf of the prosecution concerning his alleged responsibility for a crime contradicts the constitutional guarantee that "[n]o person shall be ... compelled in any criminal prosecution to testify against himself." Or.Const. art. I, § 12.
The order is not saved by excluding questions concerning defendant's "acts or conduct at or immediately near the time of the commission of the offense." Even this exclusion is limited to "acts or conduct," which may or may not be controverted. It does not exclude questions concerning defendant's perceptions, thoughts, or emotions, though these may be the decisive issue for his guilt or innocence of the charge. On that issue, the order seeks to compel the defendant to testify against himself in answer to questions put "for and on behalf of the State."
If this feature of the order had been attacked, I do not see how it could be sustained. Were questions of the kind covered by this order put to defendant in court, which is the tribunal for trying his guilt, he would be entitled to stand mute. That constitutional rule cannot be circumvented by ordering him to answer the questions *616 before trial. To repeat what I said in State ex rel. Johnson v. Woodrich, 279 Or. 31, 39, 566 P.2d 859, 862 (1977):
"The state has made a person's mental condition a crucial factor in the existence or extent of his culpability. If, as I assume, he could not be compelled to answer questions about his state of mind in court, he equally cannot be compelled to answer them out of court. His statements to the state's examiner about that mental condition may become the basis of testimony against him on that crucial factor in a criminal trial. No one can be compelled to give the prosecution statements that may be used against himself, even if this makes it more difficult for the prosecution to contradict evidence in his favor."
If is it thought that some kind of psychiatric examination may be compelled by drawing a line between privileged "testimonial" cooperation and "nontestimonial" cooperation outside the constitutional privilege, see State ex rel. Johnson v. Dale, 277 Or. 359, 364, 560 P.2d 650 (1977), this order does not draw that line.
However, the present petition for a writ of mandamus does not object to the circuit court's order in this respect. The other challenges to the order are correctly dealt with in the Court's decision, in which I therefore concur.
TANZER, Justice, concurring.
Because the state submitted the challenged order and has no objection to it, this case presents no occasion to re-examine the holdings, commencing with Shepard v. Bowe, 250 Or. 288, 442 P.2d 238 (1968) upon which the order is based. Accordingly, I concur in the majority opinion.
It is difficult from the detached position of a reviewing court to know whether our theoretical solutions work. If the order in this case is representative, and I suspect it is, then our case law commencing with Shepard v. Bowe is utterly inappropriate. Instead of providing for an objective psychiatric or psychological examination as contemplated by ORS 161.315, we have created a deposition-like adversary proceeding which has very little to do with truth-seeking. It is time, in a proper case, to reexamine this procedure in light of the defendant's rights, the nature of mental defenses, the informational requirements of the examiner and the needs of the adjudicative process, but I concur that this is not the case in which to do so.
HOWELL, J., joins in this concurring opinion.
NOTES
[*] Lent, J., did not participate in this decision.
[1] ORS 161.315 provides:

"Upon filing of notice or the introduction of evidence by the defendant as provided in subsection (3) of ORS 161.309, the state shall have the right to have at least one psychiatrist or licensed psychologist of its selection examine the defendant. The state shall file notice with the court of its intention to have the defendant examined. Upon filing of the notice, the court, in its discretion, may order the defendant committed to a state institution or any other suitable facility for observation and examination as it may designate for a period not to exceed 30 days. If the defendant objects to the examiner chosen by the state, the court for good cause shown may direct the state to select a different examiner."
[2] In Shepard this court reviewed an order which specifically required the defendant in a psychiatric examination to "answer questions concerning his accident or conduct at or immediately near the time of the commission of the alleged crime." After reviewing varying ways in which other jurisdictions have dealt with such orders, we concluded that:

"The only way in which the constitutional right of the defendant not to be compelled to testify against himself can be adequately preserved is to hold that the defendant cannot be required to answer the questions which the trial court's order requires him to answer * * *." 250 Or. at 293, 442 P.2d at 240.
This court recognized that the effect of its holding might be to lessen the quality of evidence available to the state, but expressed the view that such a possibility was a necessary price to be paid to enforce the defendant's constitutional protection.
[3] In Woodrich this court re examined the rule as stated in Shepard. No single view commanded a majority of the court. An opinion by Justice Holman, joined by Chief Justice Denecke and Justice Lent, reaffirmed the limitations of Shepard, after considering several alternative solutions to the problem of self-incrimination, such as use of a limiting instruction, some form of exclusionary rule, and the use of bifurcated trials. That opinion concluded that although the rule in Shepard is subject to criticism, it is the most satisfactory solution to the problem.

Justice Linde concurred in the result reached by the majority in dismissing the mandamus proceeding in that case, suggesting that the permissible scope of the state's examination should be limited to "non-testimonial" matters. Justice Howell, joined by Justices Tongue and Bryson, dissented, contending that this court should adopt an exclusionary rule such as that used in federal courts. Such a rule would allow unrestricted questioning of the defendant during a psychiatric examination, but would preclude use by the state of incriminating answers to such questions.
[4] See State ex rel. Johnson v. Richardson, 276 Or. 325, 330 n. 3, 555 P.2d 202 n. 3 (1976).
[5] At least one other court has required a similar procedure during psychiatric examinations to "aid in attaining the goal of accuracy in the trial * * *." Houston v. State, 602 P.2d 784, 796 (Alaska 1979).