264 So.2d 868 (1972)
Johnnie Rayburn McMUNN, Appellant,
v.
STATE of Florida, Appellee.
No. P-208.
District Court of Appeal of Florida, First District.
July 25, 1972.
*869 Richard W. Ervin, III, Public Defender, and John W. Watson, III, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., William W. Herring and Richard W. Prospect, Asst. Attys. Gen., for appellee.
RAWLS, Judge.
By this appeal from a judgment of conviction of murder in the second degree, appellant challenges the admissibility of certain testimony of a court-appointed psychiatrist.
About a week before the altercation giving rise to the instant charge, appellant learned that his wife had been seeing Phillip "Bones" Wasdin. On the night of June 20, 1970, appellant's wife and Bones Wasdin arrived on a motorcycle at a Krystal Restaurant where the wife was employed. Appellant and his wife had a conversation in his car and the wife then ran into the restaurant. Bones Wasdin was killed shortly thereafter. As a result of this altercation, appellant was indicted for the crime of murder in the first degree. He timely filed notice of intention to rely upon the defense of insanity and made a motion for mental examination.[1] Pursuant to this motion, Dr. John F. Nelson and Dr. John R. Steifel, qualified psychiatrists, were appointed by the court to examine appellant.
During the course of trial appellant testified that the last thing he remembered on the night Bones was killed was that his wife ran from his car. The State, in cross-examining appellant, asked him if he remembered telling Dr. Nelson what happened that night, including the events that led up to firing the shot.[2] Defense counsel objected to the question on the grounds that any communication with the court-appointed psychiatrist was privileged. The objection was overruled. On rebuttal, the State called Dr. Nelson and questioned him as follows:
"Q. State whether or not at that time and place the Defendant related to you details including remembering firing the shotgun.
"A. I can't recall whether he said he remembered firing it.
"Q. I'm sorry. I didn't hear you.
"A. I say I can't recall whether he said he remembered firing it.
"Q. Did he take you step by step through the alleged offense?

*870 "A. Yes.
"Q. Did he state whether or not he recalled going into the Krystal Restaurant?[3]
"A. Yes.
"Q. Did he state whether or not he remembered seeing the deceased inside?
"A. Yes."
In admitting the foregoing testimony the trial court relied upon Fla. Stat., § 90.242 (3), F.S.A., which provides in part:
"(3) There shall be no privilege for any relevant communications under this section:
"(b) In a criminal or civil proceeding in which the patient introduces his mental condition as an element of his ... defense ..."
The line of inquiry by the State transgressed elementary evidentiary principles. It is well settled in Florida that a defendant who relies on the defense of insanity must cooperate with court-appointed experts by answering questions propounded to him, or in the alternative be precluded from offering his independent expert testimony upon the subject.[4] An inquiry directed to court-appointed psychiatrists by the State must be limited as to insanity or sanity; a psychiatrist is not permitted to testify directly as to facts elicited from defendant during the course of compulsory examination. The statute clearly precludes the admissibility of the State's inquiry to Dr. Nelson.
Assuming arguendo that the statute removes any privilege between a defendant and a court-appointed psychiatrist, then it would have to constitutionally fall. As stated by Mr. Justice Adkins in Parkin v. State:[5]
"The constitutional privilege against self-incrimination in history and principle seems to relate to protecting the accused from the process of extracting from his own lips against his will an admission of guilt... . The Court should prohibit the psychiatrist from testifying directly as to the facts surrounding the crime, where such facts have been elicited from the defendant during the course of a compulsory mental examination."
The privilege against self-incrimination is chiseled into the jurisprudence of our State and Nation. The defense of insanity is as fundamental a right on the part of a defendant as is a plea of not guilty. Scienter must be proved by the State and it is elementary that an insane person is incapable of formulating scienter. Procedural rules for filing the plea may be prescribed; however, such rules cannot be formed in such a manner as to require a defendant to sacrifice the constitutional guarantee against self-incrimination in order to avail himself of this defense.[6] Yet, this is what the State urges this Court to hold. The rationale of the State is that this defendant, in order to effectively rely upon the defense of insanity, is compelled to cooperate with his court-appointed psychiatrists. After "telling all" to his psychiatrist, this defendant's testimony may then be impeached by interrogating the court-appointed psychiatrist. Such a device for extracting a confession from a defendant is no less effective than the use of thumbscrews, racks and third degree. A psychiatrist should testify as to his conclusions regarding a defendant's sanity, but to allow a psychiatrist to testify as to incriminating statements made to him by a defendant in the course of his examination of such defendant, would transgress the defendant's constitutional guarantee against self-incrimination.
*871 Reversed, with directions to grant defendant a new trial.
CARROLL, DONALD K., Acting C.J., and JOHNSON, J., concur.
NOTES
[1] Rule 1.210, FRCrP, 1970, 33 F.S.A.
[2] "Q. My question is state whether or not at that time and that place you told Dr. Nelson the details of what happened that night including firing the shot."
[3] Testimony of other witnesses was that appellant entered into the Krystal Restaurant and shot decedent.
[4] Parkin v. State, 222 So.2d 457 (1 Fla. App. 1969).
[5] Parkin v. State, 238 So.2d 817, 820 (Fla. 1970).
[6] Fla. Const. art. I, § 9, F.S.A.; U.S. Const. amend. XIV.