STATE of Missouri, Respondent,

v.

John Curtis McGAUTHA, III, Appellant.

No. WD 31369.

Missouri Court of Appeals,
Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1981.

Application to Transfer Denied
July 14, 1981.

Peter N. Sterling, Acting Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

The defendant was convicted of rape and sentenced to imprisonment for five years. The appeal concerns the propriety of evidence by a psychiatrist received on the defense of mental disease or defect excluding responsibility under § 552.030 and the neglect by the trial court to limit the effect of the testimony by a concomitant oral instruction and a later formal instruction as prescribed by § 552.030.6.

The defendant was formally charged with rape by an indictment returned, and entered a plea of not guilty to the accusation. The defendant then coupled that plea with a notice of intent to rely on the defense of mental disease or defect excluding responsibility under § 552.030.2. The defendant was submitted to the Western Missouri Mental Health facility for psychiatric examination for opinion as to whether the accused, as a result of mental disease or defect, lacked capacity to understand the nature of the proceedings against him and to assist in his own defense, and opinion as to whether at the time of the alleged criminal conduct, as a result of mental disease or defect, the accused was not able to conform his conduct to the requirements of law.

The report of psychiatrist Zwerenz gave opinion that the defendant was competent to stand trial and that he was not affected by a mental disease or defect at the time of the alleged offense. The court, on the basis of the report and other evidence, made the pretrial determination that the defendant was fit to proceed. On the trial of the offense to the jury, Dr. Zwerenz was a witness for the defense. In the course of testimony, he corrected the reported opinion that the defendant "was not affected by a mental disease or defect at the time of the alleged offense" to the intended opinion: "[the examiner] was not able to formulate an opinion as to whether or not [the defendant] had a mental disease or defect at the time of the crime."[1] The psychiatrist was hindered from a definitive assessment by the inability of the defendant [per Dr. Zwerenz] "to relate to me his thoughts, feelings and actions prior to, during and after the alleged offense ...." That the defendant may have suffered from a mental disease or defect at the time of the criminal conduct alleged and that the defendant may not have suffered then from such a condition, therefore, [so Dr. Zwerenz testified] were equally consistent with the inconclusive examination of Dr. Zwerenz to exploit the indeterminate medical opinion:

Q. Do you feel that your test of this defendant was handicapped by his lack of response?

A. Yes.

Q. *During your examination of him, did he ever admit that he had had intercourse with S. . . G. . . ?*[2] [emphasis added]

Counsel for defendant: I'm going to object to this line of questioning and the prosecutor knows, Your Honor, that the doctor cannot testify as to the guilt or innocence of the defendant, based upon an examination.

The Court: Do you have some law to that effect?

Counsel for defendant: No. It's just that the doctor cannot testify as to anything that goes to the guilt or innocence of this defendant, and that was given to him during his psychiatric evaluation, and I think this doctor can only testify as to whether or not the defendant at that time was suffering from a disease or defect, and the prosecutor knows that.

1. This contretempts was the result of an inadvertent contradiction between the *Responsibility At The Time of The Alleged Crime* phase of the Zwerenz report—that the examination failed to produce sufficient information for any definite conclusion—and the *In Summary* phase of the report—that the defendant ·was not affected by a mental disease or defect at the time of the alleged offense.

2. The rape victim was fully named in the formal charge, and testified in propria persona and by name. We employ the abbreviation to avoid undue embarrassment to the subject.

The court noted to counsel the content of MAI–CR 2.36[3] and inquired, in the context of the objection, what sense he attributed to that instruction.

This colloquy was exchanged:

The Court: If such testimony is admissible, then there would be no purpose for the Supreme Court in formulating Instruction MAI–CR 2.36.

Counsel: [MAI–CR] 2.36 goes to the mentality, statements that were made to him, concerning his mental condition, not statements concerning the offense.

The Court: *That's part of the doctor's basis for determining whether he was competent or incompetent at the time of the crime, the statements made by the defendant.* [emphasis added]

Counsel: But I'm saying the doctor cannot testify in this court as to any statement made to him as his opinion concerning whether or not the defendant at any time committed this offense.

The Court: Your objection is overruled. I think the doctor has the right, and *the evidence is admissible,* to testify as to what the defendant told him, and specifically, told him with reference to the crime in question, *in order for him to have some rational or medical basis upon which to reach a conclusion as to whether or not he was suffering from a mental disease or defect at the time of the alleged charge,* and that is the reason for the instruction, is when the case is submitted to the jury to inform the jury that that testimony as to what the defendant told him concerning the crime was only admissible for the purpose of his evaluation and conclusion, and not for any evidence of his guilt. So your objection is overruled. [emphasis added]

The inquiry was allowed, therefore, on the premise that: the full basis for the expert opinion as to mental disease or defect at the time of the conduct alleged should be before the jury on that issue, and that MAI–CR 2.36 serves to dispel prejudice where that disclosure of full basis for opinion includes an admission of an element of the offense by the defendant to the examiner.

The prosecutor put the question anew: "In your examination of Mr. McGautha [defendant], did he admit having intercourse with S... G...?" At this juncture, the psychiatric witness Zwerenz, in apparent consternation, asked the court to clarify his duty of testimony as an examiner under § 552.030. The allusion, as the court readily understood, was to subsection 6 of that statute:

No statement made by the accused in the course of any such examination and no information received by any physician or other person in the course thereof, whether such examination was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of whether he committed the act charged against him in any criminal proceeding then or thereafter pending in any court, state or federal. The statement or information shall be admissible in evidence for or against him only on the issue of his mental condition, whether or not it would otherwise be deemed to be a privileged communication.[4]

---

**3.** MAI–CR 2.36, Mental Responsibility: Limitation of Expert Testimony, was submitted to the jury as Instruction No. 9:

You will recall that certain doctors testified to certain statements that they said were made to them and certain information that they said had been received by them during or in connection with their inquiry into the mental condition of the defendant.

In that connection the Court instructs you that evidence of such statements and information, which the doctors said were received by them, was admitted solely on the issue of the mental condition of the defendant at the time of the offense charged against him. Under no circumstances should you consider the doctors' testimony about the statements or the information, which they say they received, as evidence that the defendant did or did not commit the acts charged against the defendant.

**4.** The text of the subsection—germane to later discussion—concludes:

If the statement or information is admitted for or against the accused on the issue of his mental condition, the court shall both orally

The court ruled that the statute admits *all* statements made by an accused to an examiner to enable the trier of fact to evaluate the basis of the expert opinion, and that MAI–CR 2.36 confines the jury consideration of the evidence to whether or not the accused suffered from a mental disease or defect at the time of the alleged offense.

The jury was returned, and the prosecutor resumed cross-examination:

Q. All right, Doctor, I think I was asking you first whether or not, when you questioned him concerning this rape, he first stated he had no intercourse with the victim who he knew by name, isn't that right?

A. That's correct.

  &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Q. And then after that, then he went on and admitted having intercourse with her, but he said she consented to it, isn't that right?

A. Yes.

Q. And then later on again, then he denied having any actual intercourse with her, isn't that right?

A. Yes.

Q. Did you, in questioning him, did you feel that he was evasive in his answers?

A. Yes.

Q. Do you think he was holding back information?

A. Yes.

The same inquiry was then put to the other examiner, Dr. Kramish, who responded that defendant McGautha told him "he did not commit the crime." The prosecutor pressed the inquiry: "Were you aware of the fact that he told Dr. Zwerenz . . . [t]hat he had had intercourse with S . . . G . . . ?" To which Dr. Kramish answered: "No." The defendant, on the liminal motion to determine fitness to proceed and then on the trial of the substantive offense, denied any sexual act with S . . . G . . . altogether.

at the time of its admission and later by instruction inform the jury that it must not consider such statement or information as

On appeal the defendant contends, among other errors, that § 552.030.6 absolutely forbids from evidence at the trial of the substantive offense inculpatory statements made by an accused to a physician during the course of an examination to determine the formal plea that the accused suffered from a mental disease or defect at the time of the offense alleged against him. We agree, and rest conclusion on the clear intendment and distinctive purpose of Chapter 552 [Criminal Proceedings Involving Mental Illness] that a person accused of crime may defend on the contention of mental illness at the time of the conduct alleged, yet not be compelled to self-incrimination in the proof of the defense.

The enactment of mental responsibility Chapter 552 reaffirms as a matter of public policy the fundamental value of our jurisprudence that free will is the postulate of responsibility [4 Blackstone's Commentaries, Chapter 2] and the cognate principle that our collective conscience does not allow punishment where it cannot impose blame [*Durham v. United States*, 214 F.2d 862, 876 (D.C.Cir.1954)]. See, also, A Symposium: Richardson, Reardon, Simeone, An Analysis of the Law, 19 J.Mo.B. 677, 681 (Dec.1963). Another precept of our organic law protects an accused against compulsory testimonial self-incrimination. Fifth Amendment to the United States Constitution; Mo.Const. Art. I, § 19 (1945); *State v. Kaiser*, 534 S.W.2d 19, 21[2] (Mo. banc 1976). The privilege against self-incrimination is personal [*Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)] and may be waived as by voluntary extrajudicial confession [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] or by voluntary assumption to the witness stand [*State v. Dean*, 400 S.W.2d 413, 416[6, 7] (Mo.1966)]. An accused, however, may not be coerced to a waiver of the privilege; rather only a knowing and intelligent relinquishment waives that constitutional prerogative. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023[2, 3] 82 L.Ed.

any evidence or whether the accused committed the act charged against him.

1461[2, 3] (1938); *State v. Norris*, 577 S.W.2d 941, 948[13] (Mo.App.1979).

The prosecution argues that a formal plea of mental disease or defect excluding responsibility under § 552.030.2 constitutes a waiver of the privilege against self-incrimination to the extent that the physician may testify to the confessions or other inculpations disclosed by the accused during examination. The argument rests on the extract from *State v. Swinburne*, 324 S.W.2d 746 (Mo. banc 1959) l.c. 751:

. We hold that the evidence was admissible upon the broad ground that where a defendant has raised, or it reasonably appears that he will raise, a defense of insanity, he waives his privilege . . . against self incrimination (Art. 1, § 19, Constitution, V.A.M.S.) to the extent that physicians for the State may properly examine him for sanity (and testify) *so long, at least, as no compulsion is used.*[5] [emphasis added]

The rule of waiver followed in *Swinburne* and decisions of that ilk, however, rest on a criminal procedure since superseded by

**5.** Other decisions to like effect are *State v. Cochran*, 356 Mo. 778, 203 S.W.2d 707, 711[4, 5] (banc 1947) and *State v. Sapp*, 356 Mo. 705, 203 S.W.2d 425, 429[2, 3] (1947).

**6.** The rationale of *Swinburne* [decided in 1959] and its predecessor kindred that an accused who proffers as a witness a psychiatrist-examiner to establish the insanity defense [then so designated] waives any claim to the privilege against self-incrimination from the disclosures of inculpatory statements made by the accused to the psychiatrist during examination is formulated as a construction of the *Missouri* Constitution [Article I, § 19]. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) thereafter extended the prohibition of the *United States* Constitution [Fifth Amendment] against self-incrimination to state prosecutions and forbade abridgment by the states. Thus, since *Malloy v. Hogan federal* constitutional standards determine whether the silence of an accused in a *state* prosecution is justified under the privilege against self-incrimination of the Fifth Amendment. *Malloy v. Hogan*, supra, l.c. 10[8], 84 S.Ct. l.c. 1494[8] Chapter 552 was enacted in 1963 and amended to its present form in 1969, after *Malloy v. Hogan*, supra.

The prosecution cites *State v. Speedy*, 543 S.W.2d 251 (Mo.App.1976) decided both after *Malloy v. Hogan* and the enactment of Chapter

Chapter 552 and so is not precedent on the contention the defendant presents.

The enactment of Chapter 552 establishes an altogether new procedure for the adjudication of criminal offenses against a mentally ill accused. *State v. Anderson*, 515 S.W.2d 534, 538 (Mo. banc 1974). It displaces an *ad hoc* medley of rules with a system conformable to developed constitutional principle.[6] The statute: enacts a qualitative definition of mental disease or defect excluding responsibility [§ 552.030.1], avails that as a defense to an accused in a criminal prosecution [§ 552.030.2], conditions the proof of the defense on a formal plea [§ 552.030.2], requires an accused who pleads the defense to submit to a psychiatric examiner appointed by the court [§ 552.-030.4], and that a copy of the report by the examiner be distributed to the prosecutor and counsel for the accused [§ 552.030.4], but limits the effect of any statement or information disclosed by the accused to the psychiatrist in the course of examination and elicited as evidence to the issue of the mental condition of the accused and not "whether the accused committed the act

552 for the continued authority of *Swinburne*. *Speedy* reads [l.c. 256[9–13]]:

When an accused enters a plea of not guilty by reason of mental disease or defect he waives his privilege under § 491.060 RSMo 1969 to exclude testimony of doctors who have examined him for that purpose, and he also waives his privilege against self-incrimination in some respects. *State v. Swinburne*, 324 S.W.2d 746 (Mo. banc 1959). That text is dictum and nothing more. The question on appeal was whether the failure of the trial court—as required by § 552.030.6—at the time the psychiatric testimony was received to orally instruct the jury that any statement made by the accused during the course of examination was admitted on the issue of mental disease or defect excluding responsibility and not whether the accused committed the act charged against him. The defendant made no contention on that appeal that the psychiatric testimony infringed his privilege against self-incrimination and, indeed, the opinion expressly finds [l.c. 257] that the psychiatric testimony divulged no statement or information disclosed by the accused in the course of examination that he had committed the act charged against him. Thus, the *Swinburne* citation was malapropos, and *Speedy* delivers only dictum.

charged against him" and—to that end—the court must both orally at the time of the reception of the evidence and thereafter formally instruct the jury as to the limited effect of the statement or information [§ 552.030.6].

The disparate contentions of the defendant and the prosecution as to the effect of § 552.030.6 raise two questions: (1) whether that statute [within the purpose of integral Chapter 552] intends that a formal plea of mental disease or defect excluding responsibility waives the constitutional privilege against self-incrimination—at least to the extent that inculpatory statements or information disclosed to a psychiatrist during examination become admissible on the issue of the defense, and (2) whether oral and formal instruction to the jury that the statements or information from the accused are received on the issue of the mental condition of the accused and not on the issue of guilt or innocence amounts to a protection from prosecution commensurate with the constitutional privilege.[7]

■ The privilege against coerced self-incrimination reflects the fundamental value that our system of criminal prosecution is accusatory not inquisitory. The onus rests on the government to prove guilt by independent evidence and not by testimony coerced from the mouth of the accused. That constitutional privilege may be neither nullified nor trammelled by state action. *Malloy v. Hogan*, supra, 378 U.S. 1, 6[1–7], 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964). A statute may supplant the privilege, but only by a grant of immunity from prosecution coextensive with the constitutional protection. *Kastigar v. United States*, 406 U.S. 441, 448[4], 92 S.Ct. 1653, 1658, 32 L.Ed.2d 212 (1972); *State ex rel. North v. Kirtley*, 327 S.W.2d 166, 170[5] (Mo. banc

1959). The privilege may also be waived by the person entitled to the protection [*Rogers v. United States*, supra, 340 U.S. 367, 370[1–3], 71 S.Ct. 438, 440[1–3], 95 L.Ed. 344 (1951)], but only by an intentional relinquishment. *Johnson v. Zerbst*, supra, 304 U.S. 458, 464[2, 3], 58 S.Ct. 1019, 1023[2, 3], 82 L.Ed. 1461 (1938).

The constitutional privilege protects an accused against *coerced testimonial* evidence only. *Schmerber v. California*, 384 U.S. 757, 760[3–5], 86 S.Ct. 1826, 1830[3–5], 16 L.Ed.2d 908 (1966); *Jones v. Schaffner*, 509 S.W.2d 72, 77[2, 3] (Mo.1974). The scheme of § 552.030 is that a formal plea of mental disease or defect excluding responsibility motivates a necessary series of events to which the accused must submit: the court *must* order a psychiatric examination for an opinion on the mental condition of the accused at the time of the offense charged [§ 552.030.4], the report of the examiner becomes evidence [§ 552.030.4], and the statements or information given by the accused to the examiner are admissible in evidence on the issue of mental condition—"whether such examination was made with or without the consent of the accused or upon his motion or upon the motion of others." [§ 552.030.6]. The statute renders perfunctory whether the request for examination initiates with the accused, the prosecution or even the court: in any event, submission to examination by a court-designated psychiatrist preconditions litigation of the defense. *State v. Minnix*, 503 S.W.2d 70, 74[5–7] (Mo.App.1973); *State v. Sears*, 501 S.W.2d 491, 492[1, 2] (Mo.App.1973). The report of the examination then becomes evidence as a matter of course and the disclosures by the accused to the examiner—unless § 552.030.6 is understood to

---

7. The prosecution does not suggest that the admission by the accused to the psychiatrist of sexual intercourse with S . . . G . . . on the occasion charged was not incriminatory of the offense, but only that the accused did not admit the act of rape since, according to the disclosure, the act was performed with her consent. The admission confesses to sexual intercourse—one component of the charge under § 566.030.1(1):

A person commits the crime of rape if: (1) He has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

The privilege, however, protects against not only coerced confession but also against disclosure of a fact necessary to a conviction. *Cantor v. Saitz*, 562 S.W.2d 774, 777 (Mo.App. 1978).

exclude confessions and other inculpations—comes before the jury, albeit by instructions to limit the effect of the admissions to the matter of defense. Statements and information given in the course of such an examination are clearly *testimonial* [*United States v. Alvarez*, 519 F.2d 1036, 1044[5, 6] (3d Cir. 1975); *Blaisdell v. Commonwealth*, 372 Mass. 753, 364 N.E.2d 191, 197[7] (1977); *Swinburne*, supra, l.c. 751], and because elicited in the course of an examination compelled by statute on pain of forfeiture of defense, the statements and information are *coerced* as well. *Blaisdell v. Commonwealth*, 372 Mass. 753, 364 N.E.2d 191, 197[7] (1977); *State ex rel. Johnson v. Dale*, 277 Or. 359, 560 P.2d 650, 652 (1977); *State v. Freeman*, 114 Ariz. 32, 559 P.2d 152, 163 [9–11] (banc 1976); *McMunn v. State*, 264 So.2d 868, 870[1–3] (Fla.App.1972); *State v. Olson*, 143 N.W.2d 69, 74 (Minn.1966).

■ Thus [contrary to contention] a statute—which conditions access to psychiatric proof of the defense on a formal plea of mental disease or defect excluding responsibility [*Stroder v. State*, 522 S.W.2d 77, 81[10–13] (Mo.App.1975)] by an examiner designated by court order [*State ex rel. Jordon v. Mehan*, 597 S.W.2d 724, 726[2, 3] (Mo.App.1980)] who may thereafter disclose to the jury on the trial of the substantive offense inculpations spoken in the course of examination—does not work a waiver of the constitutional privilege. That is because a waiver obtained under threat of the loss of the defense is not a voluntary relinquishment of right. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135[6, 7], 53 L.Ed.2d 1[6, 7] (1977); *Lefkowitz v. Turley*, 414 U.S. 70, 82[9], 94 S.Ct. 316, 324[9], 38 L.Ed.2d 274 (1973).

The statute does not, in any event, exact waiver but rather undertakes to protect an accused who submits to psychiatric examination by a grant of immunity from prosecution on the disclosures: [§ 552.030.6]

No statement made by the accused in the course of any such examination and no information received by any physician . . . shall be admitted in evidence against the accused on the issue of whether he committed the act charged against him *in any criminal proceeding then or thereafter pending in any court, state or federal.* [emphasis supplied]

The prosecution would excerpt from the text of the statute "in any criminal proceeding then pending," but that would diminish the constitutional privilege. That would allow that anomaly of a procedure which excludes from evidence self-incriminations *in all prosecutions other than the criminal proceeding in which the inculpations are compelled.* Such a rationale truncates the immunity to less than the full constitutional protection and so fails to vindicate the privilege against self-incrimination. *State ex rel. North v. Kirtley, supra,* 327 S.W.2d 166, 170[5] (Mo.banc 1959). Such a rationale also puts an accused to the dilemma of access to the defense at the expense of the obligation of the prosecution to prove guilt without the enforced assistance of the defendant. The usual rules of constitutional construction contradict such premises. The courts indulge every reasonable presumption against the waiver of a fundamental constitutional right, and do not presume an acquiescence. *Johnson v. Zerbst,* supra, 304 U.S. 458, 464[2, 3], 58 S.Ct. 1019, 1023[2, 3], 82 L.Ed. 1461 (1938). Thus, the Fifth Amendment receives a liberal construction to preserve the constitutional privilege against self-incrimination. *State v. Thomas,* 250 Mo. 189, 157 S.W. 330, 337[15] (1913). To that end, an accused may not be compelled to barter away a defense for an admission that he committed the criminal act. *Charles v. State,* 573 S.W.2d 139, 141[5, 8] (Mo.App.1978).

■ We understand § 552.030.6 to mean—congruently with these principles and the logic of Chapter 552—that no inculpatory statements or information given by an accused to a psychiatrist in the course of the examination on the defense may be used in *any* criminal proceeding against the accused, and limits all other [nonculpatory] statements or information given by the accused to the issue of mental condition. The trial court committed prejudicial error by

the admission of the inculpation related by the accused to the psychiatrist and received as testimony before the jury that the accused had performed sexual intercourse with the complainant.

Precedents confirm our view. The federal criminal practice [18 U.S.C.A. § 4244] employs a procedure comparable to our § 552.030 which provides that

[n]o statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding.

There is no duty for oral or formal instruction concurrently with the admission of the evidence as § 552.030.6 requires. The question we treat has not been considered by a federal court, but the decisions confirm the legislative purpose of the enactment [*United ed States v. Julian*, 469 F.2d 371, 376[6] (10th Cir. 1972):

The proviso in § 4244 was designed to prevent the receiving in evidence of inculpatory admissions and confessions of the accused given to a psychiatrist in connection with his mental examination . . . To allow a psychiatrist to testify as to the guilt or innocence of the defendant, by relating admissions obtained in a psychiatric study would be a gross subterfuge.

Also: *United states v. Cohen*, 530 F.2d 43, 47[7, 8] (5th Cir. 1976); *United States v. Alvarez*, 519 F.2d 1036, 1044[6] (3d Cir. 1975); *United States v. Malcolm*, 475 F.2d 420, 426[6–8] (9th Cir. 1973). The state jurisdictions with comparable statutes also exclude altogether from the trial inculpatory statements given by an accused to the psychiatric examiner as infringements of the privilege against self-incrimination. *Blaisdell v. Commonwealth*, supra, 372 Mass. 753, 364 N.E.2d 191 , 198[12–20] (1977); *State ex rel. Johnson v. Dale*, supra, 277 Or. 359, 560 P.2d 650, 652 (banc 1977); *State v. Freeman*, supra, 114 Ariz. 32, 559 P.2d 152, 163[9–11] (banc 1976); *McMunn v.*

*Florida*, supra, 264 So.2d 868, 870[1–3] (Fla. App.1972).

Implicit in the posture of the prosecution is the contention that the procedure required by § 552.030.6 for an oral instruction concurrently with the admission of the inculpatory statements and the formal instruction at submission of the case insures that the jury will confine consideration of the evidence to the issue of the mental state of the accused and not to guilt, and so vouchsafes the constitutional right against self-incrimination. That assumes an ability for fairness to tax even the most earnest jury. *State ex rel. Johnson v. Dale, supra*, 277 Or. 359, 560 P.2d 650, 652 (banc 1977); *State v. Olson, supra*, 274 Minn. 225, 143 N.W.2d 69, 72 (1966); Comments, *Psychiatry v. Law In The Pre-Trial Mental Examination*, 40 Fordham L.Rev. 827, 835 (1972). The purpose of the psychiatric examination under § 552.030.4 is to evaluate the mental condition of the accused, not to enable the examiner to testify as to whether the accused committed the crime. See, also, *State v. Freeman*, supra, 114 Ariz. 32, 559 P.2d 152, 164[10, 11] (banc 1976); *McMunn v. Florida*, supra, 264 So.2d 868, 870[4–6] (Fla. App.1972). Thus, exclusion from evidence altogether of the inculpatory statements disclosed by the accused to the examiner in the course of the enforced psychiatric examination alone subserves both the purpose of the statute and the constitutional privilege.

The peremptory prohibition of the statute aside, the reason given by the trial court for admission of the inculpation was not valid. The prosecution was allowed to question the psychiatrist-witness as to whether, in the course of examination, the accused ever admitted sexual intercourse with the prosecutrix because [in the words of the court]

"[t]hat's part of the doctor's basis for determining whether he was competent or incompetent at the time of the crime . . . ."

It was already evident, even before the question was posed, however, that the psychiatrist had no opinion as to whether the accused suffered from a mental disease or

defect at the time of the conduct alleged against him.[8] The inability of the psychiatrist to come to a definitive evaluation as to the mental condition of the accused at the time of the offense was because [in the words of the examiner-witness]

> "of the defendant's inability, for some reason, to relate to me his thoughts, feelings and actions prior to, during and after the alleged offense, which forms the nucleus of base knowledge on which I can formulate an opinion, supported by all surrounding factual material . . . ."

Whatever may have lacked for the "nucleus of base knowledge" prerequisite for a conclusive psychiatric evaluation of the mental condition of the accused, the concession by the accused [later retracted in that same examination] that he had performed the sexual act with the prosecutrix [albeit with her consent] was already known to the examiner and so could not have justified—all constitutional and statutory principle aside—that disclosure as a basis for lack of psychiatric opinion. It is evident that the admission by the accused related to the examiner was disclosed to the jury, not to explain that the accused did or did not suffer from a mental disease or defect at the time of the conduct alleged, but to exploit incrimination on the issue of guilt.

Another, even more egregious anomaly marks the procedure. The defendant took the stand, testified, and so conclusively waived *thereafter* any privilege against self-incrimination and was subject to impeachment and other cross-examination. *Blaisdell v. Commonwealth*, supra, 372 Mass. 753, 364 N.E.2d 191, 199[15–20] (1977); *State v. Dean*, supra, 400 S.W.2d 413, 416[6, 7] (Mo.1966). The prosecutor never posed to the accused, then a witness, whether he had admitted the sexual act to the psychiatrist, a fact he denied from the stand. By that time, of course, the psychia-

trist had testified and the error was irreversible. We cannot know, of course, whether it was to allay that very error that the accused became a witness.

The judgment is reversed and remanded for a new trial.

All concur.

"The examination did not produce sufficient information for this examiner to give any definitive conclusion as to whether a mental disease or defect was present at the time of the alleged crime."

---

**8.** The psychiatrist-witness had already testified that his examination was inconclusive on that issue before the prosecution undertook cross-examination. That inability to come to a definitive evaluation was already known to the prosecutor [as well as to the court and defense counsel] by the entry in the formal report submitted by the examiner under § 552.030.4: