STATE of Missouri, Respondent,

v.

Lucille OHMES, Appellant.

No. WD 35273.

Missouri Court of Appeals,
Western District.

Aug. 14, 1984.

James J. Wheeler, Keytesville, for appellant.

Michael L. Midyett, Keytesville, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

PER CURIAM:

Defendant Lucille Ohmes appeals from judgment entered upon a misdemeanor conviction by jury in Linn County Circuit Court of one count of selling intoxicating liquor to a minor, one Daniel McCubbins, § 311.310, RSMo 1978, and two counts of attempting to sell intoxicating liquor to minors, Myron Weimer and Peter Cravens, §§ 311.310, 564.011, RSMo 1978. She was assessed a fine of $500 on Count I, and $250 on each of the other two counts.

The judgment is affirmed.

On March 4, 1983, two agents of the Missouri Division of Liquor Control were sitting in their car outside Powell's Liquor Store near Salisbury, the store being located on the north side of a building which also contains a restaurant and lounge. They observed a young man, Myron Weimer, enter the liquor store. Mr. Conner, one of the agents, followed Weimer into the store and observed what Weimer did while there. Conner followed Weimer out as he left the store, as another young man, Peter Cravens, entered. Each young man had asked for a twelve-pack of Budweiser beer and paid for it, Cravens with currency and Weimer by personal check. Defendant Lucille Ohmes was the clerk on duty in the store and it was with her that Weimer and Cravens dealt. Soon afterwards, Weimer approached Cravens outside and told him that the two men outside (referring to the liquor control agents, although they had not been identified as such), looked suspicious. Each of the young men had been told by defendant to "go to the back door" to pick up his purchase, but neither one picked up his beer. The two counts of attempted sale are based upon the transactions with Weimer and Cravens.

A third young man, Darrell McCubbins, entered the store, asked defendant for a twelve-pack of Busch beer, and told her he had a ten-dollar bill. He then went out to his car and drove to the back door where he entered and picked up his beer, laid down the $10.00 bill and picked up $5.25 change which lay on the counter.

A recital of the more salient facts will accompany discussion of each point on appeal. Defendant does not challenge the sufficiency of the evidence upon which her conviction is based.

Defendant raises four points on appeal.

## I

In her first point on appeal, defendant claims she should be discharged because the trial testimony of witnesses McCubbins, Cravens, and Weimer was forced and obtained by the state by unlawful means. The three individuals had signed statements a few days prior to trial declaring their intention to exercise their Fifth Amendment privilege against self-incrimination with respect to the alleged liquor sales of March 4. The statements were produced by defendant's counsel in connection with an in limine motion to prohibit their testimony. The prosecutor told them, according to their trial testimony on cross-examination, that if they did not waive their right to refuse to testify, he would, or probably would, prosecute them, but if they did testify, he would not prosecute them.

Defendant's attorney attempted at trial to inquire of McCubbins and Cravens whether they wished to refuse to testify on self-incrimination grounds, but the trial judge denied his request. Defendant's attorney did not claim to represent any of the three. Each of the three witnesses went on to testify at the trial.

The privilege against self-incrimination is a personal right which must be affirmatively claimed by the witness himself. *State v. Foster*, 349 S.W.2d 922, 925 (Mo.1961); *State v. Malone*, 301 S.W.2d 750, 757 (Mo.1957).

The cases upon which defendant relies are inapposite. *State v. McGautha*, 617 S.W.2d 554 (Mo.App.1981), a case which, most importantly, involves defendant's exercise of his own privilege against self-incrimination, contains dicta which supports our ruling here: "The privilege against self-incrimination is personal ... and may be waived ... by voluntary assumption to the witness stand...." *Id.* at 557. (citations omitted). In each of defendant's other cited cases, the privilege was invoked by the judgment debtor himself during a judgment debtor examination. *See State ex rel. Shapiro Realty & Investment Company v. Cloyd*, 615 S.W.2d 41 (Mo. banc 1981); *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929 (Mo.App.1967).

McCubbins, Cravens, and Weimer voluntarily assumed the witness stand. Even if the prosecution's actions in eliciting testimony from them were deemed coercive, defendant would still have no basis for complaint. *State v. Phillips*, 511 S.W.2d 841, 845 (Mo.1974); *State v. Montjoy*, 587 S.W.2d 624, 627 (Mo.App. 1979). Of course, defendant could show coercion to affect the credibility of the witnesses.

Because defendant cannot pass the threshold of standing, her first point is denied.

## II

In her second point, defendant contends that the trial court erred in giving verdict-directing instruction number 5 [1] to the jury because there was insufficient evidence to support the finding of a sale under Section 311.310, RSMo 1978. [2]

The evidence adduced at trial shows that on March 4th Darrell Lee McCubbins drove to Powell's Liquor Store near Salisbury. The record reveals the following:

BY MR. MIDYETT, Prosecutor, of Darrell Lee McCubbins:

---

1. Instruction Number 5 reads:
   As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
   First, that on or about March 4, 1983, in the County of Chariton, State of Missouri, that defendant, Lucille Ohmes, sold intoxicating liquor to Darrell Lee McCubbins, and
   Second, that Darrell Lee McCubbins was at the time under the age of twenty-one years and
   Third, that the defendant, Lucille Ohmes, was not at the time the parent or guardian of Darrell Lee McCubbins, then you will find the defendant guilty under Count I of selling intoxicating liquor to a minor.

2. Section 311.310, RSMo 1978, in pertinent part, is as follows:
   Any licensee under this chapter or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years ... shall be deemed guilty of a misdemeanor....

Q. And when you entered, who was there, if anyone?

A. Lucille.

Q. Lucille—are you referring to the Defendant, Lucille Ohmes?

A. Yes.

Q. And is she here in the courtroom today?

A. Yes, she is.

Q. Seated next to Mr. Wheeler?

A. Yes.

Q. Okay, and when you entered, what did you do?

A. I told her I needed a twelve-pack of Busch.

Q. And what, if anything, did she do?

A. She—well, I told her I had a ten-dollar bill. And she told me to go around back and pick it up from the back door.

Q. And what did you do in response to that?

A. I went out to my car, drove around to the back, and got out and went in the back door, picked up my beer and my change and walked out the door.

On cross-examination, defendant's attorney elicited the following from McCubbins:

Q. So you picked up the beer and you put some money on the table—did you put some money on the table?

A. I laid the ten-dollar bill down and picked up five and a quarter.

Q. So you say you did put some money down on the table?

A. Yes, I did.

Q. And you carried the beer out the door?

A. Yes.

The evidence above, if believed by the jury, clearly shows a "sale" within the meaning of Section 311.310. The transaction between Ohmes and McCubbins is similar to that in *State v. Brock,* 280 S.W. 48 (Mo.1926), in which John Miller entered defendant's barber shop, asked him if he could get any whiskey, and defendant replied that he "might be fixed up."

Miller told defendant he wanted a pint. Defendant told him to lay $1.50 on a board indicated by him and to come back later ... When Miller returned he found the whisky where he had laid the money and the money was gone. He took the bottle of liquor. Miller said the liquor was what was commonly called moonshine. . . .

*Id.* 280 S.W. at 49.

Even without an exchange of money from Miller's hands to defendant's and the delivery of the bottle in return, a sale was made out, the court held, because "the character of the transaction as a sale is clearly apparent." *Id. See also State v. Walker,* 14 S.W.2d 441, 442 (Mo.1929).

Defendant's second point is denied.

### III

Appellant complains that the court did not define by jury instruction the term "intoxicating liquor". The term is defined by Section 311.020 as including beer (and other beverages) containing more than 3.2 percent alcohol by weight. The prosecuting attorney believed, and argues here, that since there was no MAI–CR instruction defining the term, it would have been error to give such an instruction. (For that proposition he cites *State v. Abram,* 537 S.W.2d 408 (Mo. banc 1976), to which we shall return later.) In order that the jury would be informed what the "intoxicating liquor" meant, the court took judicial notice of Section 311.020 [3] and the same was read to the jury as evidence. The defendant makes no objection to this; her complaint is only of the omission of the definition instruction.

---

**3.** Section 311.020, RSMo 1978, reads as follows:
    The term "intoxicating liquor" as used in this chapter, shall mean and include alcohol for beverage purposes, alcoholic, spiritous, vinous, fermented, malt, or other liquors, or combination of liquors, a part of which is spiritous, vinous, or fermented, and all preparations or mixtures for beverage purposes, containing in excess of three and two-tenths per cent of alcohol by weight.

While the procedure is extraordinary we are unable to say that the failure of the court to instruct on the definition of "intoxicating liquor" was reversible error. Such an instruction should have been given; failure to give it was error. *Abram* deals with commonplace terms which the jury could understand without refinement. Such words or terms, says *Abram*, should not be defined by jury instruction unless there is an MAI–CR instruction. MAI–CR 33.00, Note on Use 8, is broader, saying literally, citing *Abram*, that no definition may be given other than those in MAI–CR. But "intoxicating liquor" has a statutory meaning of which the jury must be informed. That the beer contained more than 3.2 percent of alcohol by weight was a necessary part of the state's case. *State v. Patton*, 308 S.W.2d 641 (Mo. banc 1958). The definition need not have been in a separate instruction, but could have been contained in the verdict directing instruction in lieu of the term "intoxicating liquor"—for instance, "if you find defendant sold beer containing more than 3.2 percent alcohol by weight etc."

However, we do not think the defendant was prejudiced by the failure to define "intoxicating liquor" by jury instruction. The statutory definition was in evidence. The definition was undebatable.

We hold therefore that the failure to instruct the jury on the definition of "intoxicating liquor" was erroneous but not prejudicial to defendant. Rule 28.02(e).

### IV

Defendant complains that the term "substantial step" as used in Instructions Numbers 6 and 7 was not defined for the jury. This point was not presented to the trial court in defendant's motion for new trial and therefore was not properly preserved for review. *State v. McGee*, 592 S.W.2d 886, 887–88 (Mo.App.1980); *State v. Grebe*, 512 S.W.2d 409, 410 (Mo.App.1974). We do not find the omission to have been plain error, Rule 29.12(b), and we do not find that manifest injustice or miscarriage of justice has resulted therefrom.

Defendant's last point is denied.

The judgment is affirmed.