**STATE of Missouri, Plaintiff–Respondent,**

v.

**Thomas BARNES, Defendant–Appellant.**

No. 51742.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 20, 1987.

Motion for Rehearing and/or Transfer Denied Nov. 24, 1987.

Application to Transfer Denied Feb. 17, 1988.

---

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant, Thomas Ray Barnes, was convicted after a jury trial of murder in the first degree, in violation of § 565.020, RSMo.1986, and robbery in the first degree, in violation of § 569.020, RSMo.1986. He was sentenced to concurrent terms of twenty-five years and life imprisonment without parole. Defendant appeals, claiming: 1) the trial court erred by permitting two psychologists to testify that mild mental retardation is not a mental disease or defect under Missouri law; 2) the trial court erred by allowing the state's rebuttal witness, a psychologist, to read inculpatory statements defendant made during a court-ordered psychiatric examination; 3) the trial court erred by denying verdict directors on second degree murder and manslaughter that would have included a paragraph on sudden passion arising from adequate provocation; (4) the trial court erred by overruling defendant's motion for judgment of acquittal for lack of evidence to find defendant deliberated or had the cool state of mind required for a conviction of first degree murder; and 5) the trial court erred by denying a motion for judgment of acquittal for insufficient evidence upon which to convict defendant of robbery in the first degree. We affirm.

The evidence established that the victim, Richard Smith, did not show up on June 3, 1985, for work at the restaurant where he had been employed for eighteen years. On June 6, his employer and his landlord forced open Smith's apartment door and discovered his body lying face down and naked in the bedroom. An assailant had crossed Smith's hands behind his back, and tied them with a cord looped around Smith's neck. Three lacerations caused by a blunt object covered the victim's scalp. One of the blows resulted in a depressed fracture which subsequently caused a fatal brain hemorrhage. Several other lacerations appeared about Smith's face and head.

On June 7, the Reynolds County police arrested defendant at a drive-in theater after he was seen speeding in a van along Highway 21. Defendant told police the van belonged to his friend, Richard, in St. Louis. A check on the van's license plate linked it to the homicide. Defendant then remarked, "You mean my friend, Richard, is dead," even though the police had not informed him of the victim's name.

Defendant was delivered into St. Louis Police custody on June 8 and was advised of his Miranda rights. He eventually con-

fessed to killing Smith on June 2. In a videotaped statement, defendant described an evening of drinking beer and engaging in sexual relations in Smith's apartment. According to defendant, once Smith was satisfied sexually, he reneged on a promise to lend defendant his van so that the latter could visit his family in Southern Missouri. Smith struck defendant and threatened to kill him with a metal statuette that Smith had picked up in the living room. Defendant wrested the object away from Smith, hitting him repeatedly about the head. After tying Smith up with a cord, defendant showered the victim's blood off. With Smith groaning in the bedroom, defendant wrapped his bloody tee-shirt and the lethal object in a towel and departed with the van keys and $32 from Smith's wallet. Defendant dropped the towel and its contents in the Meramec River on his way south to visit his family.

At trial, the defense sought to show defendant suffered from a mental disease or defect excluding responsibility for the crimes he allegedly committed. Daniel S. Cuneo, a clinical psychologist and defense witness, testified defendant initially feigned symptoms of insanity during a court-ordered competency examination. Cuneo classified defendant as mildly retarded with an I.Q. of 70, but competent to stand trial and sane at the time of the offense. The psychologist believed defendant would not have thought about the force that he used under stress, but merely would have reacted because mildly mentally retarded persons generally exhibit poor impulse control. Cuneo also stated defendant had a diminished ability to tell right from wrong and conform his conduct to the requirements of the law.

In rebuttal, Jonathan Rosenboom, a psychologist with the Missouri Department of Mental Health, testified defendant was not mildly mentally retarded. Rosenboom, who conducted the first competency examination requested by defendant, also stated that the Department did not recognize mild mental retardation as a mental disease or defect. Rosenboom was permitted to read extensively from a narrative of his interview with defendant, ostensibly to show

defendant's malingering about his mental condition. Dr. Michael Armour, Rosenboom's supervisor, testified that he agreed with Rosenboom's opinions. The jury returned verdicts of guilty against defendant for murder and robbery in the first degree.

In his first point relied on, defendant argues that the court should not have allowed Dr. Rosenboom and Armour to testify that mild mental retardation is not a mental disease or defect under Missouri law. Defendant contends that such conclusions by these expert witnesses invaded the province of the court to declare what the law is and precluded the jury from considering the defense of diminished capacity.

■■■ Considering the challenged testimony in the context of the entire record, we find no support for defendant's contention. Defendant's witness, Dr. Cuneo, a psychologist licensed in Missouri and Illinois and employed by the Illinois Department of Mental Health, expressed his opinion that defendant suffered from mild mental retardation and that this condition diminished, but did not exclude, his ability to conform his conduct to the requirements of the law. Although he claimed to be "somewhat familiar" with the forensic guidelines of the Missouri Department of Mental Health, when asked upon cross-examination whether that department recognized mild mental retardation as a mental disease or defect, he replied "no, I can only guess at it again." Later he conceded that he had been told the Missouri Department of Mental Health did not recognize mild mental retardation as a mental disease or defect. In rebuttal the state called Drs. Rosenboom and Armour, employees of the Missouri Department of Health. They disagreed with Dr. Cuneo's conclusion that defendant suffered from mild mental retardation. They were permitted to testify, over defendant's objection, that in clinical training sessions and guidelines promulgated by the Division of Forensic Services of the Missouri Department of Mental Health, mild mental retardation was not recognized as a mental disease or defect. Defendant objected to this line of testimony on the ground that it called for a legal

conclusion. In overruling the objection, the court stated "you may give your understanding of the Department of Mental Health's understanding of [mild mental retardation]. That is not necessarily the law as such. You may answer in that way." When examined in the framework of the record as a whole, and particularly in light of the trial court's ruling, it is clear that the witnesses were not expressing a conclusion regarding the law but merely the policy of the Department of Mental Health. The effect of mild mental retardation upon the defendant's mental capacity, once having been introduced by defendant, became a proper subject for expert testimony. *State v. Thompson*, 695 S.W.2d 154, 158 (Mo.App.1985). The admission of the evidence regarding the policy of the Missouri Department of Health followed the testimony of defendant's expert witness, an employee of the Illinois Department of Mental Health, who expressed an opinion contrary to this policy. Nothing about the admission of the challenged testimony "effectively precluded the jury from considering appellant's defense of diminished capacity" as argued by defendant. On the contrary, and especially in light of the trial court's admonition that the department's policy was not the law, a reasonable juror could only conclude that he was to resolve the differences of opinion under the evidence presented to him and the instructions given by the court. Under the facts and circumstances of this case, we find no error warranting reversal. Point denied.

■ Defendant's second point on appeal charges that the trial court erred in permitting Dr. Rosenboom to read to the jury a narrative of what the defendant told the doctor regarding the crime. Defendant argues that this statement was used as proof of guilt in violation of §§ 552.020.12 and 552.030.5, RSMo.1986. These statutes, respectively, relate to psychiatric examinations made for the purpose of determining competency to stand trial and to a plea of not guilty by reason of mental disease or defect. Section 552.020.12 precludes the use of statements made by an accused during the competency examination on the issue of guilt. Section 552.030.5 similarly bans the use of such statements on the issue of whether the accused committed the act charged against him. However, this section provides for the admission of the statements on the issue of the defendant's mental condition. Contrary to the defendant's contention, the transcript clearly shows defendant's statement to Dr. Rosenboom was admitted for the purpose of showing the foundation for the doctor's conclusion that defendant suffered from no mental disease or defect but was malingering or feigning psychological symptoms.

Dr. Rosenboom was asked about the statement only after he had expressed this opinion. He explained that in evaluating the legitimacy of a patient's claims of auditory hallucinations, i.e., the claim of hearing voices, the examiner must look to the patient's manner of speech. True auditory hallucinations are evidenced by rambling speech, incomplete, interrupted and inconsistent sentences. He based his conclusion that defendant was feigning psychological symptoms, in part, upon the fact that defendant's narration of the details of the crime exhibited none of these signs. When defendant's counsel objected to the offer of defendant's narrative statement made to the doctor, the assistant prosecuting attorney advised the court he was offering the evidence on the issue of defendant's malingering. The trial court thereupon overruled the objection and read MAI–CR2d 2.36, instructing the jury to consider the statement only on the issue of the defendant's mental condition.

Defendant relies upon *State v. McGautha*, 617 S.W.2d 554 (Mo.App.1981), wherein our brethren in the Western District held that the admission of the statement made by an accused during a psychiatric examination violated his Fifth Amendment right against self-incrimination. The court reasoned that any waiver of this Fifth Amendment privilege resulting from a plea of not guilty by reason of mental disease or defect was a coerced waiver, compelled under threat of forfeiture of the right to assert that defense. The court held that earlier decisions, *State v. Swinburne*, 324 S.W.2d 746 (Mo. banc 1959), *State v. Cochran*, 356 Mo. 778, 203 S.W.2d 707 (banc 1947), *State*

v. *Sapp*, 356 Mo. 705, 203 S.W.2d 425 (1947) and *State v. Speedy*, 543 S.W.2d 251 (Mo. App.1976), which reached an opposite conclusion, were no longer valid in view of statutory enactments and the extension of the Fifth Amendment protection to state prosecutions pursuant to *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

In *State v. Carter*, 641 S.W.2d 54 (Mo. banc 1982) the Supreme Court of Missouri, with no mention of *McGautha*, reaffirmed *Swinburne, Cochran, Sapp* and *Speedy* and stated "a defendant who pleads insanity waives all other privileges [in addition to physician-patient privilege,] including the attorney-client privilege, *People v. Edney*, [39 N.Y.2d 620, 350 N.E.2d 400, 385 N.Y.S. 2d 23 (N.Y.App.1976)] and the privilege against self-incrimination." *Id.* at 57.

We are constrained to follow the last controlling decision of the Supreme Court. Article V, § 2 Missouri Constitution of 1945. Accordingly, we find no violation of the defendant's Fifth Amendment privilege because defendant's statement to Dr. Rosenboom was offered for the purpose of determining defendant's mental condition and was subject to the limiting instructions given by the trial court pursuant to § 552.030.5 and MAI–CR2d 2.36. Moreover, the statement merely reiterated the substance of several other statements of defendant which were already before the jury. We find no error and no prejudice. Point denied.

■ Defendant's third point on appeal asserts instructional error. On the homicide count, the trial court instructed the jury on first and second degree murder including the standard paragraphs on self-defense. The court refused to give defendant's proffered instruction on second degree murder, including paragraph "third, that the defendant did not do so under the influence of sudden passion arising from adequate cause." The court also refused to give MAI–CR2d 13.08, voluntary manslaughter. The refusal to give these instructions forms the basis for defendant's third point on appeal.

We need not address the merits of defendant's argument that the evidence justified the giving of the instructions in the form offered by defendant. The jury found the defendant guilty of murder in the first degree. This verdict necessarily includes a finding that he killed the victim after deliberation. Deliberation is the antithesis of reaction to sudden passion. *State v. Endres*, 698 S.W.2d 591, 594 (Mo. App.1985). Having found each of the essential elements of murder in the first degree, the jury was precluded from consideration of lesser included offenses. The refused instructions condition their consideration by the jury upon the predicate "if you do not find defendant guilty of murder in the first degree ..." Accordingly, any possible error in the giving or refusal of lesser degree instructions is rendered nonprejudicial by a finding of guilty of the greater offense. The issues in this case are similar to those in *State v. Powell*, 728 S.W.2d 622, 624 (Mo.App.1987). In *Powell*, we held that a defendant, convicted of first degree murder, was not prejudiced either by the refusal to instruct upon voluntary manslaughter or by the refusal to include in the second degree murder instruction the optional paragraph requiring absence of sudden passion. We continue to believe *Powell* was correctly decided. In view of his conviction of the higher offense, defendant cannot be heard to claim prejudicial error because of the refusal of instructions which the jury would be directed not to consider.

Defendant's final two points challenge the sufficiency of the evidence. He contends the state failed to prove deliberation in the homicide count and failed to prove that he used force to take or permanently deprive the victim of property in the robbery count. The facts detailed at the outset of this opinion demonstrate that these contentions are unsubstantiated.

■ Deliberation is usually inferred from the circumstances surrounding the killing. *State v. Endres*, 698 S.W.2d at 594. Deliberation has been inferred from evidence of multiple wounds. *State v. Dickson*, 691 S.W.2d 334, 339 (Mo.App. 1985); *State v. Hurt*, 668 S.W.2d 206, 215 (Mo.App.1984). Such an inference is strengthened by failure to seek aid for the

victim and by making false statements to the police. *Dickson*, at 339; *Hurt* at 216. Strangulation followed by the tying of a towel around the victim's neck was held to justify an inference of premeditation and deliberation in *State v. Sturdivan*, 497 S.W.2d 139, 142 (Mo.1973). In the instant case, deliberation is certainly inferable from the following evidence: the numerous blows about the victim's head and face, the fact that the victim was bound with his hands behind his back and a cord looped tightly around his neck, the fact that defendant left the victim in this condition, showered off the victim's blood, wrapped the weapon and bloody clothes in a towel and threw them in the river, the fact that defendant took the victim's money and car keys and abandoned the groaning victim, still alive and bound on the bed. Moreover, defendant's contention that the state failed to prove he took the victim's property by force or that he intended to steal rather than borrow the van, viewed in the light of this evidence, is patently without merit.

The judgment is affirmed.

SNYDER and SIMEONE, Senior Judges, concur.